* Note from the reporter of decisions: The attorney for the party named in this opinion as "Southern Energy Homes Retail Corporation" has informed the reporter that the entity actually was incorporated under the name "Southern Energy Homes Retail Corp."
Southern Energy Homes Retail Corporation ("Southern Energy") appeals from the trial court's June 1, 2000, order, which stated in part:
 "1. This court orders all parties involved to arbitration by judicial reference in accordance with the Retail Installment Contract, Security Agreement, Waiver of Trial by Jury and Agreement to Arbitration or Reference or Trial by Judge Alone and the Alabama Arbitration Act;
". . . .
 "4. In accordance with the Retail Installment Contract, Security Agreement, Waiver of Trial by Jury and Agreement to Arbitration or Reference or Trial by Judge Alone, the court appoints Charles E. Harrison, an active attorney, to hear this controversy and determine all questions of law and fact and render a decision;
 "5. The arbitration by judicial reference is to take place within 45 days of this order.
 "This proceeding is stayed until the court hears the final disposition of the arbitration by judicial reference." *Page 847 
Southern Energy contends that the trial court erred in denying its motion to compel arbitration. However, we do not read the above-quoted order as denying a motion to compel arbitration. In fact, the trial court ordered all parties to arbitration and stayed the proceeding pending arbitration. "[A]n appeal is . . . the proper procedure by which to challenge a denial of a motion to compel arbitration." A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala. 1990) (emphasis added). "[A] petition for a writ of mandamus is the proper means to test a trial court's granting of a motion to arbitrate or the granting of a stay pending arbitration."[1] Ex parte Alexander, 558 So.2d 364, 365 (Ala. 1990). In Morrison Restaurants, Inc. v. Homestead Village of Fairhope,Ltd., 710 So.2d 905, 906 (Ala. 1998), this Court stated:
 "Before we discuss the issues presented by the parties, we first consider whether the trial court's order was reviewable, thereby quickening this Court's jurisdiction. The fact that Morrison styled its request for relief as an appeal is not determinative. The order entered in this case is one referring a pending case to mediation and/or arbitration. This Court has previously held that a petition for a writ of mandamus is the appropriate method of challenging an order referring a case to arbitration. Accordingly, we treat Morrison's `appeal' as, in reality, a petition for a writ of mandamus."
(Citations omitted.) Because the trial court's order refers the case to arbitration, we will treat Southern Energy's "appeal" as a petition for a writ of mandamus.
On November 10, 1997, Terry D. McCool purchased a manufactured home from Southern Energy in Columbus, Mississippi; the home was delivered to McCool's property in Carrollton, Alabama. Fleetwood Homes of Georgia, Inc. ("Fleetwood"), was the manufacturer of the home.
In connection with the purchase of this manufactured home, McCool executed numerous documents. Among those documents were a "Retail Installment Contract, Security Agreement, Waiver of Trial by Jury and Agreement to Arbitration or Reference or Trial by Judge Alone" (hereinafter referred to as "the Retail Installment Contract"), an "Alternative Dispute Resolution Agreement," and "A Contract Between B.R. Holding Corp. and Terry D. McCool."[2] Each of these documents contained an arbitration provision.
McCool's purchase of this manufactured home was financed through Bank of America. The terms of the financing arrangement were outlined in the Retail Installment Contract, which stated:
 "`I,' `me,' `myself' or `my' means all persons who sign this Contract as buyer or co-buyer, jointly and severally, and `you' or `your' mean the Seller [Southern Energy, formerly known as B.R. Holding Corp.] and any assignee. This Contract will be submitted to the Creditor indicated below, at a local office and, if approved, it will be assigned to that Creditor. On the date of this Contract [November 10, 1997], I buy from you on a credit sale basis the manufactured home described on page 2, together with furnishings, equipment, appliances and accessories included in the manufactured *Page 848 
home at the time of purchase (called `Manufactured Home').
"CREDITOR: BANK OF AMERICA, FSB"
On November 12, 1999, Greenpoint Credit Corporation, as Servicing Agent for BankAmerica Housing Services, Inc., a division of Bank of America (hereinafter referred to as "Greenpoint Credit"), filed a two-count complaint against McCool, contending that McCool was unlawfully detaining and possessing the manufactured home. Greenpoint Credit also demanded a judgment against McCool in the sum of $37,638.57 (the price of the manufactured home), plus interest and costs. Greenpoint Credit contended that that was the sum that was "due by Retail Installment Contract and Security Agreement made by [McCool] on November 10, 1997, a copy of which is attached as Exhibit `A.'"
McCool answered and also filed a counterclaim against Greenpoint Credit and a cross-claim against Southern Energy and Fleetwood. Greenpoint Credit, Southern Energy, and Fleetwood each filed answers. Greenpoint Credit also filed a cross-claim against Southern Energy.
Southern Energy moved to compel arbitration and to stay the proceedings. With its motion to compel arbitration, Southern Energy filed copies of the three documents executed on November 10, 1997, each of which contained an arbitration provision. Fleetwood joined in Southern Energy's motion to compel arbitration. McCool filed a response in opposition to the motion to compel arbitration. Thereafter, the trial court issued its June 1, 2000, order.
Southern Energy argues that although the trial court properly compelled arbitration, it erred when it compelled arbitration in a manner that was not consistent with the terms of the agreements between the parties.
Page 4 of the Retail Installment Contract contains the following arbitration provision:
"ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:
 "a. Dispute Resolution. Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee by trial by a judge without a jury, as described below. YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.
 "b. Arbitration. Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the American Arbitration Association (`AAA') also shall apply. The arbitrator(s) *Page 849 
 shall follow the law and shall give effect to the statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 or the United States Arbitration Act or upon a finding of manifest injustice.
 "c. Judicial Reference or Trial by a Judge. If requested by either you or me, any controversy or claim under subparagraph (a) that is not submitted to arbitration as provided in subparagraph (b) shall be determined by reference to a referee appointed by the court who, sitting alone and without jury, shall decide all questions of law and fact. You and I shall designate to the court a referee selected under the auspices of the AAA in the same manner as arbitrators are selected in AAA-sponsored proceedings. The referee shall be an active attorney or retired judge. If the court where the controversy is venued lacks the power to appoint a referee, the controversy instead shall be decided by trial by a judge without a jury."
It appears that this is the arbitration provision the trial court relied on in fashioning its June 1, 2000, order. However, it appears that the trial court, although it ordered the parties to arbitrate, failed to compel arbitration in a manner consistent with the terms of this arbitration provision. This arbitration provision clearly states in section a.:
 "A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee by trial by a judge without a jury, as described below."
This matter involves McCool and arises from his purchase of the manufactured home. Under the terms of section a., this controversy was subject to arbitration as described in section b. In its June 1, 2000, order, the trial court used the procedure described in section c. ("Judicial Reference or Trial by a Judge") in fashioning its order. However, the trial court failed to fashion its order in a manner consistent with the terms of section c.
In Morrison Restaurants, Inc. v. Homestead Village of Fairhope, Ltd.,710 So.2d at 907, this Court stated:
 "It is well established that the writ of mandamus is an extraordinary remedy and requires a showing that there is `(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
(Citation omitted.) We conclude that Southern Energy is entitled to the writ of mandamus. We direct the trial court to vacate its June 1, 2000, order.
We note that the documents executed by McCool on November 10, 1997, contain two other arbitration provisions.[3] *Page 850 
[EDITORS' NOTE: THIS PAGE CONTAINED FOOTNOTES.] *Page 851 
Southern Energy also contends that the trial court erred in failing to dismiss the complaint because, it says, it is apparent from the face of the complaint that the tort claims are time-barred and that no warranty claims can be asserted against Southern Energy because it was not the manufacturer of the home. However, the June 1, 2000, order does not make any reference to a motion to dismiss; thus, we cannot be certain that the trial court considered a motion to dismiss.
PETITION GRANTED; WRIT ISSUED.
Moore, C.J., and See, Lyons, Brown, Harwood, Woodall, and Stuart, JJ., concur.
[1] See Rule 4(d), Ala.R.App.P., as amended effective October 1, 2001. By that amendment, an order either granting or denying a motion to compel arbitration will be reviewable by appeal.
[2] B.R. Holding Corp. changed its name to Southern Energy Homes Retail Corp. on March 2, 1998.
[3] The "Alternative Dispute Resolution Agreement" is a one-page document; it states:
 "THIS ALTERNATIVE DISPUTE RESOLUTION AGREEMENT is entered into by and between B.R. HOLDING CORP. (`Dealer') [now known as Southern Energy] and the undersigned Purchaser(s) (`Purchaser(s)') [McCool] on this the 10th day of November 1997. This Agreement is the same `Arbitration Agreement' referenced in the Contract(s) by and between Dealer and Purchaser(s) entered into on this same date (`Contract(s)'). This Agreement is for the benefit of Purchaser, Retailer, Manufacturer, and Lender, their successors, agents and assigns, as fully as if they were signatories hereto.
 "The Dealer and Purchaser(s) mutually covenant, stipulate and agree, in connection with the resolution of any dispute arising out of or related to the Contract(s) entered into by the parties of and concerning the within described manufactured home or the relationships created by the sale, warranty and financing of the subject manufactured home, as follows: That the manufactured home described was manufactured from parts manufactured outside of Alabama; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by laws of the United States of America; and that the Contracts(s) entered into by the parties concerning said manufactured home evidence transactions involving and affecting commerce. The undersigned agree that all disputes not barred by applicable statutes of limitations or otherwise barred by law, resulting from or arising out of the sale transaction entered into, or the relationships resulting therefrom (including, but not limited to the terms of this arbitration provision, this Agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services acquired by the Purchaser(s) from the Dealer; the condition of the manufactured home, the conformity of the manufactured home sold to the Contract of Sale; the representations, promises, undertakings, warranties or covenants made in connection with the sale of the manufactured home, or otherwise dealing with the manufactured home; the delivery and set up of the manufactured home; the terms of financing in connection therewith; any terms or provisions of any property and casualty, credit life and/or disability insurance purchased simultaneously herewith); that the Dealer and the Purchaser(s) agree to submit such dispute(s) to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C. § 1, et seq. and according to the Commercial Rules of the American Arbitration Association then existing in the County where the Dealer maintains its principal place of business, except as follows: (a) The party seeking affirmative (monetary) relief shall prepay all arbitration filing fees and processing fees. (b) In all disputes in which the matter in controversy is $10,000 or less, one arbitrator shall be selected from a list of no less than ten arbitrators supplied by the American Arbitration Association, through strikes, in accordance with said Association's Commercial Rules. In all disputes in which the matter in controversy exceeds $50,000, the arbitrators shall be selected as follows: the Dealer shall select one arbitrator, the Purchaser(s) shall select one arbitrator, the two arbitrators so selected shall select a neutral arbitrator from a list of suitable neutral arbitrators supplied by the American Arbitration Association. (c) An arbitrator or arbitrators impaneled to hear any dispute brought before them shall be empowered to enter an award of damages, fees and costs, or for such other relief as may be found by a majority of them to be proper, as said arbitrator or arbitrators deem just and proper. Notwithstanding, the maximum award permitted, in connection with any dispute submitted to said arbitrator or arbitrators, shall not exceed the amount demanded by the party seeking affirmative relief at the time the original demand for arbitration is filed. Any party to this agreement who fails or refuses to arbitrate in accordance with the terms of this predispute binding arbitration agreement shall, in addition to any other relief awarded through arbitration, be taxed by the arbitrator or arbitrators with all of the costs, including reasonable attorney fees, of any other party who had to resort to judicial or other means in compelling arbitration in accordance with the terms herein contained. THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT, AND IN LIEU OF ANY TRIAL BY JURY."
In the "ADDITIONAL TERMS AND CONDITIONS" section of "A Contract Between B.R. Holding Corp. (now known as Southern Energy) and Terry D. McCool," we find the following arbitration provision:
 "12. ARBITRATION AGREEMENT. ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THE INTERPRETATION, PERFORMANCE OR BREACH OF ANY PROVISION OF THIS CONTRACT SHALL BE RESOLVED EXCLUSIVELY BY MANDATORY AND BINDING ARBITRATION, IN ACCORDANCE WITH THE APPROPRIATE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AS OUTLINED IN AND PROVIDED BY THE ARBITRATION AGREEMENT BETWEEN SELLER AND PURCHASER. SELLER AND PURCHASER ACKNOWLEDGE AND AGREE THAT THE MANUFACTURED HOME SOLD BY THE SELLER AND PURCHASED BY PURCHASER INVOLVES INTERSTATE COMMERCE.
 "13. WAIVER OF JURY TRIAL. Purchaser hereby waives any and all rights he or she may have to a trial by jury of any dispute, claim or issue arising out of this Contract with Seller.
 "14. REMEDIES CUMULATIVE. Seller's rights and remedies under this Contract and under Alabama law are cumulative and not mutually exclusive."