825 So.2d 779 (2002)
HAROLD ALLEN'S MOBILE HOME FACTORY OUTLET, INC.
v.
Patrick C. BUTLER.
1002000.
Supreme Court of Alabama.
January 18, 2002.
*780 Sterling G. Culpepper and Beth J. Moscarelli of Balch & Bingham, L.L.P., Montgomery, for appellant.
J. Jefferson Utsey, Butler, for appellee.
LYONS, Justice.
The sole issue presented in this case is whether the trial judge, in granting a motion to arbitrate a dispute between the buyer and the seller of a mobile home, erred by holding that a provision in the arbitration agreement authorizing the seller of the mobile home to select the arbitrator, with one limitation stated in the provision, was unconscionable, and that "[u]nder the Federal Rules, the court must appoint an arbitrator," which the court then did.
The seller, Harold Allen's Mobile Home Factory Outlet, Inc. (hereinafter "Harold Allen"), filed a notice of appeal, but asked this Court, in the alternative, to treat the appeal as a petition for a writ of mandamus, which we do.[1] See Southern Energy *781 Homes Retail Corp. v. McCool, 814 So.2d 845 (Ala.2001). Reviewing the record and considering the briefs, we are of the opinion that the arbitration agreement allowing Harold Allen to select the arbitrator is unconscionable; consequently, the writ of mandamus is due to be denied.

Facts
Patrick C. Butler filed a complaint against Harold Allen on June 12, 2000, alleging several causes of action arising out of his purchase of a mobile home from Harold Allen.
Harold Allen timely filed a motion to stay and to compel arbitration, supported by a brief and exhibits, in which it sought to enforce an arbitration agreement it had entered into with Butler. The arbitration agreement provides, in pertinent part:
"As a part of the consideration for the sale of the subject chattel, BUYER and SELLER, for themselves and for their respective heirs, successors, assigns and legal representatives, hereby enter into this Agreement wherein the BUYER does knowingly, intelligently and voluntarily waive any and all rights that he, she or they may otherwise have to a trial by jury, or otherwise, in the event of any disagreement, claim, demand or other dispute which may arise between the BUYER and the SELLER and/or any of the SELLER's agents or representatives, directly or indirectly, with regard to the sale, purchase, finance (if applicable), delivery, setup, service and/or maintenance of the chattel made the subject hereof, whether such claim arises prior to, on or subsequent to the date of the execution of this Agreement, each intending to be fully and mutually bound by the terms hereof and preferring to resolve their disagreements, claims, demands or other disputes through binding arbitration, except as otherwise provided hereinbelow, and whether such disagreement, claim, demand or other dispute may involve contractual disputes, claims of fraud by way of suppression, misrepresentation, inducement or otherwise, breach of expressed or implied warranties, negligence, recklessness, wantonness, intentional misconduct and/or any other similar or dissimilar legal or equitable claim of any type, including, without limitation, disputes as to the arbitrability of all of the foregoing matters and/or the validity of this Agreement.

"The SELLER shall have the right to select an arbitrator who shall arbitrate any disagreement, claim, demand or other dispute between the SELLER and the BUYER, having all powers as may be provided for by law, by regulation, by legislative act or otherwise; provided, however, that no arbitrator may be selected by the SELLER who shall have provided legal representational services to or for the SELLER at any time.

". . . .
"The parties to this Agreement recognize and acknowledge that the sale of the chattel made the subject hereof is a transaction having its basis in interstate commerce; that this Agreement is to be governed by the Federal Arbitration Act *782 and by any applicable laws of the State of Alabama; and that the American Arbitration Association Commercial Arbitration Rules are incorporated into and made a part of this Agreement as if the same were fully and completely set forth herein."
(Emphasis added.)
On June 7, 2001, the trial court entered an order granting in part and denying in part Harold Allen's motion to stay and to compel arbitration. The trial court held "that the clause in the arbitration contract as to the selection of the arbitrator is unconscionable," but it made no findings of fact to support its conclusion. The court then went on to say: "Under the Federal Rules, the court must appoint an arbitrator. The court picks Spence Walker to arbitrate the matter."

I.
As previously stated, the sole issue presented in this appeal is whether the trial court erred in holding that the provision in the arbitration agreement allowing Harold Allen to select the arbitrator was unconscionable. The law states, and Harold Allen agrees, that arbitration agreements are subject to traditional contract defenses, including unconscionability. Ex parte Colquitt, 808 So.2d 1018 (Ala.2001), in which this Court, citing Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), held that, as a general rule, applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement without contravening § 2 of the Federal Arbitration Act.
Harold Allen candidly admits that the issue whether the arbitration agreement was unconscionable was a question for the trial court to decide, and we agree. See Green Tree Fin. Corp. of Alabama v. Wampler, 749 So.2d 409 (Ala.1999). ("The issue of unconscionability of an arbitration clause is a question for the court and not the arbitrator. 9 U.S.C. § 2; Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 41 (Ala.1998) (Lyons, J., concurring specially), followed in Ex parte Napier, 723 So.2d 49, 52 (Ala.1998)." 749 So.2d at 415.) Harold Allen argues before this Court, however, that even if "the trial court had the ability to `reform' the Agreement by removing only the arbitration selection provision (the `selection provision'), the trial court erroneously found this provision unconscionable assumedly because the provision does not, on its face, require Butler's consent." (Harold Allen's brief at pp. 9-10) (footnote omitted).
Butler states that he filed two briefs in the trial court in opposition to Harold Allen's motion to stay and to compel arbitration. In both briefs, he says, he argued that the arbitration agreement was void or, in the alternative, that he was entitled to a trial on the issue of the validity of the arbitration agreement. Butler filed a supplemental brief in opposition to Harold Allen's motion to compel arbitration, in which he asked the trial court "to find that the provision of [Harold Allen's] arbitration clause governing the selection of an arbitrator be deemed unconscionable." Butler also argued in that supplemental brief, without citing any authority, that "[t]he court should apply the federal rules of arbitration and pick the arbitrator for this matter."
Responding to the argument Butler made in his supplemental brief, Harold Allen argued that Butler had "provide[d] no legal authority whatsoever for his proposition," and that "Butler's conclusory assertion that the agreed upon method for selecting an arbitrator [was] `clearly unfair'... [was] based on nothing more than speculation," and "Butler assumes that Allen's *783 choice of an arbitrator will work to `the detriment of Butler.'"
Harold Allen argued before the trial court and argues before this Court that Butler has presented no factual or legal support for his contention that the provision for choosing the arbitrator is unconscionable. Harold Allen also argued before the trial court that it "[was] unaware of any federal rules of arbitration which specify that the court should choose an arbitrator."

II.
Did the trial court err in finding that the provision in the arbitration agreement in this case allowing Harold Allen to select the arbitrator was unconscionable? We think not.
In Layne v. Garner, 612 So.2d 404, 408 (Ala.1992), this Court stated:
"While it is true that a court may rescind a contract, or a portion of a contract, for unconscionability, `[r]escission of a contract for unconscionability is an extraordinary remedy usually reserved for the protection of the unsophisticated and uneducated.' Marshall v. Mercury Finance Co., 550 So.2d 1026, 1028 (Ala.Civ.App.1989), quoting E & W Building Material Co. v. American Savings & Loan Ass'n, 648 F.Supp. 289, 291 (M.D.Ala.1986); and see Wilson v. World Omni Leasing, Inc., 540 So.2d 713 (Ala.1989).
"An unconscionable contract or contractual provision is defined as a contract or provision `such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' Lloyd v. Service Corp. of Alabama, 453 So.2d 735, 739 (Ala.1984), quoting Hume v. United States, 132 U.S. 406, 410, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889)."
(Emphasis added.)
We pretermit consideration of the sufficiency of Butler's evidence because we conclude that the arbitration-selection provision allowing Harold Allen to select the arbitrator with no input from Butler is unconscionable as a matter of law.
Harold Allen cites a decision of a federal district court in Mississippi, which it says states that it is obvious that a provision giving a party to an arbitration agreement the ability to unilaterally select an arbitrator does not, by itself, raise the specter of unconscionability. See Raesly v. Grand Housing, Inc., 105 F.Supp.2d 562, 569 (S.D.Miss.2000), in which the court stated:
"Plaintiffs' argument regarding substantive unconscionability consists of the following one sentence in their brief: `The Arbitration Contract goes so far as to give Defendant Corporation or its assignees the sole right to choose the arbitrator.' Even if this fact alone could be viewed as rendering the contract so one-sided as to be unconscionableand obviously it cannotthe fact is, this is not what the agreement states. Rather, it provides for an `arbitrator selected by Assignee with consent of Buyer(s).'"
(Emphasis added.) The statement in Raesly regarding the unconscionability of a provision giving one party to an arbitration agreement the right to select the arbitrator is distinguishable dicta. It arose in a setting where the agreement gave the buyer the right of consent to the seller's choice of arbitrator. See also Lackey v. Green Tree Financial Corp., 330 S.C. 388, 498 S.E.2d 898 (1998), recognizing that one party's right to veto the exercise of the power of selection of the arbitrator conferred on the other party operates to prevent unconscionability in view of 9 U.S.C. § 5, providing for appointment of an arbitrator *784 by the court if for any reason "there shall be a lapse in the naming of an arbitrator."
Our research has not disclosed a single case upholding a provision in an arbitration agreement in which appointment of the arbitrator is within the exclusive control of one of the parties. On the other hand, in Hooters of America, Inc. v. Phillips, 39 F.Supp.2d 582, 614 (D.S.C.1998), aff'd, 173 F.3d 933 (4th Cir.1999), the court found an arbitration agreement to be unconscionable where, among other things, the party resisting arbitration had "acceded to Hooters acting as the sole gatekeeper to the list of `Approved Arbitrators.'" See also Board of Educ. of Berkeley County v. W. Harley Miller, Inc., 160 W.Va. 473, 236 S.E.2d 439 (1977), in which the court stated, albeit in dicta:
"A functional analysis of the West Virginia cases which do not favor arbitration demonstrates that this Court would not countenance an arbitration provision by which the parties agree that all disputes will be arbitrated by a panel chosen exclusively by one of the parties. This is the classic rabbits and foxes situation, with the foxes stacking the arbitration panel in their favor. Such a contract provision is inherently inequitable and unconscionable because in a way it nullifies all the other provisions of the contract. While we do not have a case presenting that set of facts, we may conceptualize it as one extreme in a spectrum going from arbitration as a means of defeating just claims to arbitration as a speedy, economical means of conflict resolution."
160 W.Va. at 479-80, 236 S.E.2d at 443-44 (emphasis added).
More recently, in Ditto v. RE/MAX Preferred Properties, Inc., 861 P.2d 1000, 1003 (Okla.App.Ct.1993), the court noted:
"The United States Supreme Court in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145[, 148-49], 89 S.Ct. 337[, 339][, 21 L.Ed.2d 301] [1968], held that courts should be even more scrupulous to safeguard the impartiality of arbitrators than judges, because arbitrators are completely free to decide the law and [to] determine the facts and are not subject to appellate review."
Then, in declining to enforce the arbitration agreement before it, the court held:
"Nonetheless, we agree with the West Virginia Supreme Court of Appeals that such an arbitration clause as would exclude one of the parties from any voice in the selection of arbitrators cannot be enforced. Such a clause conflicts with our fundamental notions of fairness, and tends to defeat arbitration's ostensible goals of expeditious and equitable dispute resolution."
Id., 861 P.2d at 1004 (emphasis added).
Harold Allen argues that the arbitration agreement contains sufficient safeguards to ensure the appointment of an impartial arbitrator. First, Harold Allen says, the selection provision itself bars it from selecting as an arbitrator anyone "who shall have provided legal representational services to or for the SELLER at any time," and, second, Harold Allen argues, the arbitration agreement expressly incorporates the American Arbitration Association ("AAA") rules as if those rules were fully and completely set forth in the agreement. Simply because the appointed arbitrator could not have represented Harold Allen as a lawyer but, instead, could be someone who serves full-time as its arbitrator is cold comfort to the buyer. Likewise, we fail to see how the applicability of AAA rules of procedure could save a claimant from the effects of a decision potentially driven by the bias of one who is compensated *785 for services rendered and who does not necessarily have to demonstrate objectivity to qualify for reappointment.
The portion of the arbitration agreement in this case excluding one of the parties from selection of the arbitrator is unconscionable. Such provision offends fundamental notions of fairness. No sensible person with a range of choices would agree to such a provision, and no honest and fair man would accept a provision offensive to fundamental notions of fairness. See Layne v. Garner, 612 So.2d at 408 ("An unconscionable contract or contractual provision is defined as a contract or provision `such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'"). The paucity of precedent in this area of the law bespeaks a commendable lack of chutzpah on the part of the business community.
The trial court, upon finding the provision for unilateral selection of the arbitrator by one party unconscionable, held that "[u]nder the Federal Rules, the court must appoint an arbitrator." Title 9 U.S.C. § 5 provides:
"If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if ... a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator ... then upon the application of either party to the controversy the court shall designate and appoint an arbitrator."
(Emphasis added.) The trial court's appointment of an arbitrator as a result of its holding "that the clause in the arbitration contract as to the selection of the arbitrator is unconscionable" is a lapse that triggers its authority to appoint under 9 U.S.C. § 5.

Conclusion
The provision in the arbitration agreement conferring upon Harold Allen the sole authority to appoint the arbitrator is unconscionable. Once the trial court so held, the trial court was authorized to appoint an arbitrator. Based on the foregoing, we are of the opinion that the petition for the writ of mandamus is due to be denied.
WRIT DENIED.
HOUSTON, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
WOODALL, J., concurs specially.
SEE and BROWN, JJ., concur in the result.
MOORE, C.J., concurs in part and dissents in part.
WOODALL, Justice (concurring specially).
I concur fully in the Court's opinion. Harold Allen is not entitled to any relief where it has made no showing that the American Arbitration Association Commercial Arbitration Rules give the American Arbitration Association the authority to disqualify an arbitrator whose impartiality or independence has been challenged.
SEE, Justice (concurring in the result).
I agree that in this case the provision of the arbitration agreement giving the seller the right to select the arbitrator is unconscionable and that such a provision ordinarily would be unconscionable; however, "parties may ... contract as they see fit, so long as they do not offend some rule of law or contravene public policy, and this court will not attempt to alter the expressed intentions of the parties if they *786 are clear and unambiguous." Vardaman v. Benefit Ass'n of Ry. Employees, 263 Ala. 236, 239, 82 So.2d 272, 275 (Ala.1955). Such a provision in an arbitration agreement may be enforceable where the agreement is not one of adhesion and where the parties knowingly and willingly enter into it.[2] This is not such a case.
MOORE, Chief Justice (concurring in part and dissenting in part).
I agree with the majority's decision to deny the petition for the writ of mandamus in this case. However, I consider the issue in this case to be irrelevant because, for the reasons I articulated in my dissent in Selma Medical Center, Inc. v. Fontenot, 824 So.2d 668, 676 (Ala.2001), I do not believe arbitration can be compelled under the Federal Arbitration Act in Alabama. Therefore, I concur with the majority's holding that the trial court did not err in finding unconscionable the provision in the arbitration agreement that allowed Harold Allen to unilaterally select the arbitrator. I dissent, however, from the majority's holding that, faced with a "lapse in the naming of an arbitrator," the Alabama trial court had the authority under 9 U.S.C. § 5 to appoint an arbitrator in a case in Alabama.
NOTES
[1] In a footnote in its brief to this Court, Harold Allen states that it "filed its notice of appeal [on August 3, 2001,] prior to this Court's ... decision in Southern Energy Homes Retail Corp. v. McCool," 814 So.2d 845 (Ala.2001), and that this Court, in McCool, "treated an appeal challenging a trial court's `denial' of a motion to compel arbitration as written in the arbitration agreement (essentially, an inappropriate `grant' of the motion with respect to only a portion of the agreement) as a petition for writ of mandamus. McCool, 814 So.2d at 847." (Harold Allen's brief at p. 1 n. 1.)

In any event, the case is properly before this Court, because the trial court, on July 14, 2001, granted Harold Allen's motion to certify the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Harold Allen's brief is styled "Appeal from, or petition for writ of mandamus to, the circuit court of Marengo County, Alabama."
[2] Although the agreement to arbitrate may be enforceable, the arbitration still may be challenged if the arbitrator who is selected is biased. See 9 U.S.C.A. § 10, which states, in pertinent part:

"(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration
"(1) Where the award was procured by corruption, fraud, or undue means.
"(2) Where there was evident partiality or corruption in the arbitrators, or either of them."