Sears Termite Pest Control, Inc. ("Sears Termite"), appeals from the trial court's order denying its motion to compel arbitration. We reverse and remand.
On May 31, 1997, after a sales presentation by Kenneth Davis and Larry Brown, Abby Robinson agreed to purchase termite-inspection and treatment services from Sears Termite for her home in Tuskegee. Robinson signed a contract entitled a "Subterranean Termite Control Residential Customer Agreement" ("the service contract"). Robinson says that during their sales presentation, Davis and Brown represented to her that Sears Termite would perform an initial termite inspection and treatment; that Sears Termite would re-treat and repair her home if it were damaged by termites; that her home would be a "termite free island" if the treatment was performed; that the treatment would act as a "fortress against termites"; and that the service contract was like insurance against termite damage. *Page 154 
Pursuant to the service contract, Sears Termite's technicians were to perform annual inspections of Robinson's home using products that would prevent termite infestations.
The contract provided, in pertinent part, as follows:
 "COVERAGE: For a period of one year, beginning on the Effective Date shown above, Sears Termite Pest Control (`Sears') agrees to provide the necessary service and treatment for the control of Subterranean Termites for the Covered Premises for the sum of $2140.00. . . . In addition, Sears warrants that it will perform any further retreatment it finds necessary, free of charge for the initial and renewal terms of this Agreement subject to the Conditions of Coverage found on the reverse side. This Agreement covers Subterranean Termites only.
". . . .
 "REPAIR: Subject to the Conditions of Coverage found on the reverse side, if Subterranean termite damage occurs in or on the Covered Premises, or its contents, while this Agreement is in effect, then Sears will be responsible for the reasonable cost of repairs, as determined by Sears. No payment will be made by Sears unless Sears has been given the opportunity to inspect the Covered Premises and the area requiring repair prior to the start of any repairs.
 "REINSPECTION: So long as this Agreement is in effect, Sears will reinspect the Covered Premises in conjunction with renewal or upon reasonable request of owner."
The "Conditions of Coverage" referenced in the paragraphs quoted above were printed on the reverse side of the service contract. Those conditions stated, in pertinent part, as follows:
 "5. The liability of Sears for repairs under this Agreement shall not exceed, in the aggregate and over the entire term of this Agreement[,] including any extensions and renewals, the sum of $250,000. In no event shall Sears be responsible for repairs or redecoration in areas not directly affected by or in the immediate vicinity of termite damage or for indirect expenses or consequential damages relating to the existence of termites or termite damage.
". . . .
 "10. The Customer and Sears agree that any controversy or claim between them arising out of or relating to the interpretation, performance or breach of any provision of this agreement shall be settled exclusively by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. In no event shall either party be liable to the other for indirect, special or consequential damages or loss of anticipated profits."
In June 2001, Robinson discovered that her home was infested with and had been damaged by termites. After she discovered the damage, she filed a claim with Sears Termite to have the damage repaired. She says, however, that Sears Termite never responded to her claim and never repaired the damage. Robinson sued Sears Termite and Sears Termite employees Davis, Brown, and Bobby Rivers.[1] She alleged breach of contract; bad-faith *Page 155 
refusal to pay her claim; negligent, reckless, or wanton misrepresentations; negligent and/or wanton failure to properly treat and/or inspect her home; intentional or reckless fraud; and suppression.
Sears Termite moved to compel arbitration of Robinson's claims. In support of its motion, Sears Termite filed the affidavit of Scott Gilman, its vice president of operations, who authenticated a copy of the service contract between Robinson and Sears Termite, and the affidavit of Tommy D. Brewer, its director of finance, who provided information about the interstate nature of the operations of Sears Termite. Robinson filed an objection to Sears Termite's motion, but did not offer any evidence. In her objection, Robinson alleged that Sears Termite failed to demonstrate that the transaction made the basis of her complaint had a substantial effect upon interstate commerce. In her brief to this Court, however, Robinson says that at the time she filed her objection, she had not received a copy of Brewer's affidavit, and she now acknowledges that the transaction did substantially affect interstate commerce. Robinson also argued that the arbitration provision contained in paragraph 10 of the "Conditions of Coverage" was void because it disclaimed liability for "indirect, special or consequential damages or loss of anticipated profits," and, she argued, it was therefore contrary to public policy and was unconscionable. Finally, Robinson points out that her signature is on the front page of the service contract and the arbitration agreement is on the reverse; she says: "While the front page of the agreement does mention the reverse side of the agreement, it does not indicate that the provisions on the back side of the agreement are to be included in the agreement Ms. Robinson actually signed."
The trial court denied Sears Termite's motion to compel arbitration. The trial court's order states:
 "Defendant in the above-styled cause [has] filed a motion to compel arbitration. A part of the plaintiff's objection to arbitration concerns the limitation in the arbitration provision of the contract which prohibits the imposition of damages for mental anguish or other consequential damages by the arbitrator. But for that limitation [of consequential damages] it would appear that the arbitration agreement should be enforceable.
However, since the agreement prospectively eliminates an element of damage[s] which may or may not arise during the course of the contract the court is of the opinion that the arbitration agreement is unconscionable and is therefore unenforceable."
(Emphasis added.) Sears Termite appealed from that order.[2]
Sears Termite argues that the trial court erred when it concluded that the entire arbitration provision was unconscionable solely on the basis of the language that precluded either party's recovery for "indirect, special or consequential damages or loss of anticipated profits." Sears Termite acknowledges that this Court has held that a provision in an arbitration agreement prohibiting an arbitrator from awarding punitive damages is void because it violates the public policy of this State. Ex parte Thicklin, 824 So.2d 723 (Ala. 2002);Cavalier Mfg., Inc. v. *Page 156 Jackson, 823 So.2d 1237 (Ala. 2001), cert. denied,535 U.S. 986, 122 S.Ct. 1536, 152 L.Ed.2d 464 (2002). Sears Termite says that the service contract at issue here does not mention punitive damages, and furthermore, it argues, this Court has held that the entity with the authority to express public policy is the Legislature, not the judiciary. Sears Termite maintains that a contractual prohibition against awarding punitive damages violates a specific statute (§ 6-11-20, Ala. Code 1975), but that the Legislature has not enacted a statute limiting or disclaiming consequential or indirect damages.
Sears Termite also argues that in the context of consumer goods the Legislature has determined that disclaimers of consequential and indirect damages are valid and enforceable. It relies for that argument upon this Court's recent decision in Leonard v.Terminix Int'l Co., 854 So.2d 529 (Ala. 2002), in which we stated that "[i]n Alabama, limitations on damages that may be recovered are not, per se, against public policy." 854 So.2d at 534. Because Leonard involved an identical disclaimer of consequential damages, Sears Termite argues that Leonard is dispositive of this case.[3]
Robinson argues that this Court erred in looking to the provisions of Alabama's Uniform Commercial Code ("UCC") in deciding Leonard. Robinson relies upon § 2-28-10.1, a statute contained in the portion of the Code of Alabama 1975 that regulates entomological work.[4] Section 2-28-10.1(a) provides:
 "The commissioner [of the Department of Agriculture and Industries] with the approval of the State Board of Agriculture and Industries may promulgate rules and regulations which require any applicant for a permit to perform professional work or services to provide evidence of his ability to properly indemnify persons damaged in any manner by the use or application of pesticides. The amount and form of indemnification required shall be determined by rules and regulations promulgated by the commissioner with the approval of the State Board of Agriculture and Industries."
Robinson argues in her brief to this Court that the limitation on damages in the arbitration provision is directly at odds with the foregoing statute, and that § 2-28-10.1 demonstrates the Legislature's "desire . . . that persons who are damaged in any way be fully and properly indemnified for damages caused by companies providing termite service." In response, Sears Termite argues in its brief to this Court that § 2-28-10.1 pertains only to the commissioner's authority to promulgate regulations requiring a company providing termite eradication services to provide evidence indicating that it possesses the financial resources to cover damage claims made by its customers, and that "this provision does not suggest a broad, public policy statement of the legislature that mandates all customers be able to sue termite companies for unlimited mental anguish or other consequential damages." *Page 157 
In Ex parte Thicklin, 824 So.2d 723 (Ala. 2002), this Court addressed its authority with relation to the enforceability of contractual provisions. In Thicklin we stated:
 "This Court has limited authority to deal with the enforceability of contract terms. It can nullify or reform a contract on the basis of fraud; it can also nullify or reform a contract to eliminate any unconscionable provisions or terms that violate public policy. As previously noted, a contract provision that violates public policy can be subsumed under the theory of substantive unconscionability. See Ex parte Foster [, 758 So.2d 516 (Ala. 1999)]. However, § 43 of the Constitution of Alabama of 1901 mandates the separation of judicial power from legislative power and condemns the usurpation of the power of one branch of government by the other. The authority to declare public policy is reserved to the Legislature, subject to limits imposed by the Constitution. Rogers v. City of Mobile, 277 Ala. 261, 281, 169 So.2d 282, 302 (1964). We must therefore weigh the claim that a contractual provision immunizing a party from liability for punitive damages is unconscionable in light of the public policy of this State as expressed by the Legislature or by its people in the Constitution."
824 So.2d at 732. We weigh Robinson's claim that the contractual provision restricting the recovery of consequential damages is unconscionable against the same backdrop of the public policy of the State as expressed by the Legislature or by the people in the Constitution and in light of caselaw setting forth the parameters for finding a contract unconscionable.
Turning to Robinson's contention that the Legislature, in enacting § 2-28-10.1, intended that an individual or an entity that applies pesticides be liable for the full measure of damages caused by those pesticides, we find that the statute does not support such a conclusion. Section 2-28-10.1 provides that the Commissioner of the Department of Agriculture and Industries "may" promulgate rules and regulations requiring an applicant for a permit to apply pesticides to demonstrate its ability to indemnify persons damaged in any manner by the use or application of pesticides. The statute goes on to state that the amount of indemnification required "shall be determined by rules and regulations." Presumably, the commissioner may, but is not required to, promulgate rules requiring demonstration of a pesticide applicator's financial ability and, if the commissioner takes such action, the commissioner must determine the amount of indemnification required. Robinson does not provide us with a citation to the Alabama Administrative Code that would inform us whether the commissioner has taken such action, and our independent research has failed to yield any indication that the commissioner has taken such action. However, for all that appears, should the commissioner elect to promulgate such rules, it would be within the commissioner's authority to fix an amount substantially less than the $250,000 maximum established by Sears Termite in the service contract for other than consequential damages. In light of the range of discretion afforded the commissioner, we cannot conclude from the statute that the Legislature has announced a public policy in favor of providing a remedy for consequential damages for injuries sustained as a result of the application of pesticides.
We note that other jurisdictions have declined to apply the provisions of the UCC to contracts involving the application of pesticides. See Insul-Mark Midwest, Inc. v. Modern Materials,Inc., 612 N.E.2d 550, 556 (Ind. 1993) ("Similarly, courts in various jurisdictions have held that arrangements *Page 158 
for application of pesticides and herbicides are predominantly service transactions. Abelman v. Velsicol Chemical Corp., 15 U.C.C. Rep. Serv.2d (Callaghan) 93 . . . (Md. Cir.Ct. 1991);Grossman v. Aerial Farm Serv., 384 N.W.2d 488 (Minn.Ct.App. 1986); Missouri Farmers Ass'n v. McBee, 787 S.W.2d 756
(Mo.Ct.App. 1990)."). Therefore, while the provisions of the UCC may not be directly applicable to the transaction before us, in deciding this case we find it noteworthy that the Legislature has endorsed the validity of limitations on the recovery of consequential damages so long as they are not unconscionable. See § 7-2-719(3), Ala. Code 1975. While Robinson has a right to a remedy guaranteed by Art. I, § 13, Ala. Const. of 1901, we have not been furnished with any authority suggesting that a limitation on the right to recover consequential damages violates Art. I, § 13. That §7-2-719(3), with its safety valve in the form of a remedy if the limitation is unconscionable, and Art. I, § 13, have coexisted peacefully for almost 40 years stands as strong, albeit mute, evidence of the lack of any constitutional infirmity of that provision.
We are therefore left only with the question whether the $250,000 limitation in the service contract on damages, in conjunction with the prohibition on the recovery for consequential damages, is unconscionable. In Harold Allen'sMobile Home Factory Outlet, Inc. v. Butler, 825 So.2d 779 (Ala. 2002), we addressed unconscionability as follows:
 "In Layne v. Garner, 612 So.2d 404, 408 (Ala. 1992), this Court stated:
 "`While it is true that a court may rescind a contract, or a portion of a contract, for unconscionability, "[r]escission of a contract for unconscionability is an extraordinary remedy usually reserved for the protection of the unsophisticated and uneducated." Marshall v. Mercury Finance Co., 550 So.2d 1026, 1028 (Ala.Civ.App. 1989), quoting E W Building Material Co. v. American Savings Loan Ass'n, 648 F.Supp. 289, 291 (M.D.Ala. 1986); and see Wilson v. World Omni Leasing, Inc., 540 So.2d 713
(Ala. 1989).
 "`An unconscionable contract or contractual provision is defined as a contract or provision "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Lloyd v. Service Corp. of Alabama, 453 So.2d 735, 739 (Ala. 1984), quoting Hume v. United States, 132 U.S. 406, 410, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889).'"
825 So.2d at 783 (emphasis added in Harold Allen's Mobile HomeOutlet).
The contractual provision in the service contract here caps recovery for damage to a residence as a result of pesticide treatment for termites at $250,000, excluding liability for "indirect expenses or consequential damages relating to the existence of termites or termite damage." In light of the foregoing standard, especially the definition of an unconscionable provision as one that no man in his sense and not under delusion would make and that no honest and fair man would accept, we simply cannot conclude that the limitation on recoverable damages in the service contract is unconscionable.
Robinson's final argument asserts that the conditions of coverage on the reverse side of the service contract, where the contractual limitation of recoverable damages is found, are not binding on her. Robinson relies upon Thermo-Sav, Inc. v.Bozeman, 782 So.2d 241, 243 (Ala. 2000), in which we held that "the `Governing Law' provision, which contained the arbitration clause, was not a part of the contract *Page 159 
because there was no indication on the front of the contract that additional provisions appeared on the back of the contract and that those additional provisions were a part of the contract." InThermo-Sav we noted that "[t]he front of the contract contains no language indicating that additional terms appear on the reverse side of the contract or directing the contracting party's attention to those additional terms." 782 So.2d at 243.Thermo-Sav is distinguishable, because the conditions of coverage that appear on the reverse side of Robinson's service contract are referred to three times on the front page.
We therefore reverse the order of the trial court denying arbitration and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., dissents.
[1] According to the trial court's docket sheet, Bobby Rivers was served with the complaint, but he has not entered an appearance in the case. Larry Brown and Kenneth Davis have never been served. The employees are not parties to this appeal.
[2] Robinson argues initially that this Court does not have jurisdiction to hear the appeal because, she says, the appeal is from an interlocutory order. An order denying a motion to compel arbitration has long been an exception to the general rule that interlocutory orders are not appealable. See, e.g., Ex parteSmith, 736 So.2d 604 (Ala. 1999). As of October 1, 2001, "[a]n order granting or denying a motion to compel arbitration is appealable as a matter of right." Rule 4(d), Ala. R.App. P.
[3] In relying on Leonard, Sears Termite notes in its brief to this Court that the defendant in Leonard "concede[d] that the contract in [that] case says nothing of punitive damages." 854 So.2d at 534. In its brief to this Court, Sears Termite states that it "has made the same concession to the trial court that this disclaimer of consequential [damages] has no bearing on punitive damages."
[4] "Entomological work" is defined as "[r]eceiving fees for advice or prescriptions for the control or eradication of any insect pest or rodent or for actual spraying, dusting, fumigating, or any other methods used for the control or eradication of any insect pest or rodent." § 2-28-1(1).