854 So.2d 529 (2002)
Walter LEONARD, Jr., and Evalina Leonard
v.
TERMINIX INTERNATIONAL COMPANY, L.P., et al.
1010555.
Supreme Court of Alabama.
October 18, 2002.
Opinion on Denial of Rehearing February 7, 2003.
*530 J. Michael Rediker, Patricia C. Diak, and Michael C. Skotnicki of Haskell, Slaughter, Young & Rediker, L.L.C., Birmingham, for appellants.
John R. Chiles, Wilson F. Green, and Scott A. Boykin of Burr & Forman, L.L.P., Birmingham, for appellees.
W. Pemble Delashmet and J. Robert Turnipseed of Pierce, Ledyard, Latta, Wasden & Bowron, P.C., Mobile; and Joana S. Ellis of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for amicus curiae Alabama Defense Lawyers Association, in support of the application for rehearing.
Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for amicus curiae Automobile Dealers Association of Alabama; Matthew C. McDonald and Kirkland E. Reid of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, *531 for amici curiae Alabama Civil Justice Reform Committee, Alabama Retail Association, and The Business Council of Alabama; and H. Hampton Boles and Michael L. Edwards of Balch & Bingham, L.L.P., Birmingham, for amici curiae Alabama Bankers Association, Alabama Civil Justice Reform Committee, Alabama Retail Association, Automobile Dealers Association of Alabama, and The Business Council of Alabama, in support of the application for rehearing.
J. Mark Englehart of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for amici curiae Trial Lawyers for Public Justice, AARP, and the National Association of Consumer Advocates, in opposition to the application for rehearing.
Steven P. Gregory of Dice & Gregory, L.L.C., Tuscaloosa, for amici curiae Alabama Arise and Alabama Watch, in opposition to the application for rehearing.
E.J. "Mac" McArthur, Montgomery, for amicus curiae Alabama State Employees Association, in opposition to the application for rehearing.
David G. Wirtes, Jr., of Cunningham, Bounds, Yance, Crowder & Brown, Mobile; and Barry A. Ragsdale of Ivey & Ragsdale, Birmingham, for amicus curiae Alabama Trial Lawyers Association, in opposition to the application for rehearing.
PER CURIAM.
Walter Leonard, Jr., and Evalina Leonard, representatives in this putative class action against Terminix International Company, L.P.; David L. Myers; Terminix International, Inc.; TSSGP Limited Partnership; Service Master Incorporated of Delaware; Service Master Consumer Services, L.P.; Service Master Company, L.P.; and TSSGP Management Corp. (hereinafter referred to collectively as "Terminix"), appeal from an order compelling arbitration of the dispute. We reverse and remand.
The Leonards became involved with Terminix in 1994, when they purchased a house. With that purchase, they also acquired the termite bond the seller had with Terminix. The real-estate transaction closed on August 19, 1994.
Within two months of the closing, the Leonards received through the mail a "Termite Protection Plan" ("the Plan"). The Plan provided, in pertinent part:
"5. DISCLAIMER.
"....
"D. TERMINIX DISCLAIMS ANY LIABILITY FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES. THE GUARANTEES STATED IN THIS AGREEMENT ARE GIVEN IN LIEU OF ANY OTHER GUARANTEES OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.
"....
"9. ARBITRATION. The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to this agreement shall be settled exclusively by arbitration. Such arbitration shall be conducted in accordance with the Commercial Arbitration rules then in force of the American Arbitration Association. The decision of the arbitrator shall be a final and binding resolution of the disagreement which may be entered as a judgment by any court of competent jurisdiction. Neither party shall sue the other where the basis of the suit is this agreement other than for enforcement of the arbitrator's decision. In no event shall either party *532 be liable to the other for indirect, special or consequential damages or loss of anticipated profits."
(Capitalization in original.)
The Plan provided for an annual renewal at the rate of $62 per year. Although the Plan was not signed by the Leonards, it designated "Walter Leonard" as the purchaser, and, at the top of the first page, stated: "TRANSFER TO NEW OWNER: 8/94." It also provided that "Terminix [would] inspect the identified property at any time the Purchaser request[ed] it or if Terminix believe[d] it necessary." The Leonards paid the renewal fees in 1995, 1996, and 1997.
In June 1996, the Leonards received through the mail a "Terminix Termite Guarantee" ("the Guarantee"), which purported to summarize the terms of the Plan. Specifically, it stated that Terminix would "[r]einspect the identified property at any time the purchaser request[ed] it or if Terminix believe[d] it [was] necessary." It also stated: "The Plan provides for arbitration of any controversy or claim arising out of or re[lat]ing to the Plan."
Also in 1996, Evalina Leonard telephoned Terminix to request a reinspection. At another time, when Terminix sales representatives were in the Leonards' neighborhood soliciting business, they asked Evalina if she would do business with Terminix. She told the representatives that she already had a contract with Terminix. However, between 1994 and 1997, Terminix had no occasion to repair or re-treat the Leonards' house. Thus, at all relevant times, Terminix applied no termiticide or chemicals to the premises.
Meanwhile, Terminix was engaged in a dispute with the Alabama Department of Agriculture and Industries ("the Department"). In that connection, the Department charged Terminix with violating Ala. Code 1975, § 2-28-9, which provides, in pertinent part:
"Every person engaged in subterranean termite eradication and control work shall make an annual inspection of each job done during the term of the contract and shall report to the building owner in each instance as to whether or not there has been a reinfestation of subterranean termites. If a contract for termite eradication work provides for inspections of such work at intervals of less than one year, such inspections shall be made as required by the terms of the contract, and failure or refusal to make such required inspections or any retreatment or other related work as required by a contract shall constitute a valid and sufficient reason for revocation of the permit."
(Emphasis added.) More specifically, Terminix was charged with "[f]ailure to perform annual inspections on properties under subterranean termite contract for the year of 1995 and January, February and March of 1996." Ultimately, Terminix agreed to pay $1,200 to settle the dispute with the Department. As part of the settlement, Terminix was required to conduct "annual inspections of all properties under [its] subterranean termite contract[s]."
On May 6, 1997, the Leonards, "on behalf of themselves and all others similarly situated," filed a six-count complaint against Terminix. Count one was styled "Civil Tort for Criminal Conduct and Action for Statutory Penalties, Qui Tam." The essence of the complaint, as contained in count one, is that Terminix owed a statutory duty to all its customers to conduct annual inspections, see § 2-28-9, and that Terminix had systematically failed to do so. The plaintiffs further alleged that the violation of § 2-28-9 is a crime, as defined in Ala.Code 1975, § 2-28-11(a):

*533 "(a) Penalties. Any person who engages in professional work or services as defined in this chapter or any person who solicits such work through advertising or in any other manner without having a permit as required by said chapter or any person who violates any of the provisions or requirements of this chapter or any rules and regulations adopted and promulgated as authorized under said chapter by failure to comply with any of the requirements or rules and regulations of said chapter shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than $25.00 nor more than $500.00 and, within the discretion of the court, may also be imprisoned for a period not to exceed six months."
Specifically, count one alleged:
"44. Ala.Code § 2-28-9 requires that every person engaged in subterranean termite eradication and control work shall make an annual inspection of each job done during the term of guarantee or contract and shall report to the building owner in each instance as to whether or not there has been a reinfestation of subterranean termites, and this statute was enacted for the protection of the welfare of the consumers and public of the State of Alabama. Plaintiffs are within the class of persons that Ala.Code § 2-28-9 was enacted to protect. Pursuant to Ala.Code § 2-28-9, defendants owed a duty to the plaintiffs to make adequate annual inspections and reports to the plaintiffs.
"45. Ala.Code § 2-28-11 makes it a criminal offense to fail to make annual inspections and to fail to report to the building owner in each instance as to whether or not there has been a reinfestation of subterranean termites.
"46. Defendants intentionally, wantonly or recklessly, or negligently failed to make adequate annual inspections and reports as required by law, and this failure constitutes a criminal act.
"47. Defendants' intentional, wanton or reckless, or negligent failure to make adequate annual inspections and reports and their violation of Ala.Code § 2-28-9 has proximately caused injury to the plaintiffs.
"48. Plaintiffs have the right to bring this claim pursuant to Hardie-Tynes Manufacturing Co. v. Cruse, 189 Ala. 66, 66 So. 657 (1914) (holding that every criminal act which injures the person or property of another is also a civil tort, redressable by the courts), and its progeny.
"49. Plaintiffs further have the right to bring this claim pursuant to Ala.Code § 6-5-50 (Alabama's qui tam statute) on behalf of themselves and the counties in which the above-described violations have occurred because a penalty is imposed by statute which does not provide a mode for recovery but for which the common law does permit a recovery."
The complaint sought, among other things, rescission of the plaintiffs' contracts with Terminix and restitution of amounts paid Terminix under the contracts.[1]
On June 27, 1997, Terminix International Company, L.P., moved to compel arbitration of the action against the defendants. Eventually, all the Terminix defendants joined in a motion to compel arbitration. On October 25, 2001, the trial court entered an order compelling arbitration. The court held, among other *534 things, that the Leonards and Terminix were parties to a valid, enforceable agreement to arbitrate a dispute that substantially affected interstate commerce. From that order, the Leonards appealed.
On appeal, they present three arguments. The Leonards first argue that their contract with Terminix does not contain an arbitration clause. Second, they insist that the transaction did not have a nexus with interstate commerce sufficient to render the arbitration clause enforceable, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Third, they contend that the arbitration clause is unconscionable. Assuming, without deciding, that there is no merit in the Leonards' first two grounds for reversal, we agree with the Leonards that the arbitration clause is unconscionable, and, therefore, unenforceable.

I. Unconscionability
The Leonards argue that the arbitration clause is unconscionable and therefore unenforceable, because, they contend, the arbitral forum is neither accessible nor adequate under the facts of this case. It is inadequate, they contend, because it purports to preclude awards of certain species of damages. It is inaccessible, because, they insist, among other things, it precludes a class action.

A. Adequacy
The Leonards contend that the arbitral forum is inadequate, because the arbitration clause purports to preclude a remedy for "indirect, special or consequential damages or loss of anticipated profits." Leonards' Brief, at 42. They rely on Ex parte Thicklin, 824 So.2d 723 (Ala.2002), in which this Court held that a portion of an arbitration provision purporting to exclude liability for punitive damages was unconscionable and unenforceable as a violation of public policy. However, this case is distinguishable.
Terminix concedes that the contract in this case says nothing of punitive damages. In Alabama, limitations on damages that may be recovered are not, per se, against public policy. It is well established that "`[t]he Legislature is endowed with the exclusive domain to formulate public policy in Alabama....'" Ex public Celtic Life Ins. Co., 834 So.2d 766, 767 (Ala.2002) (quoting Cavalier Mfg., Inc. v. Jackson, 823 So.2d 1237, 1245 (Ala.2001) (opinion on return to remand), cert. denied, 535 U.S. 986, 122 S.Ct. 1536, 152 L.Ed.2d 464 (2002), overruled on other grounds, Ex parte Thicklin). The Legislature, for example, has declared: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable, but limitation of damages where the loss is commercial is not." Ala.Code 1975, § 7-2-719(3) (emphasis added). See also Kennedy Elec. Co. v. Moore-Handley, Inc., 437 So.2d 76, 81 (Ala.1983) ("Alabama law clearly permits a seller to limit or exclude by contract any liability for consequential damages.... Such agreements are valid and enforceable.").
This is not a personal-injury case. Nor is it a case involving damage to the Leonards' house. Instead, it is a case based on alleged violations of a statutory duty, where primarily equitable remedies are sought, namely, rescission of the Plan, and the restitution of the annual renewal amounts paid under it. From a public-policy standpoint, we can discern no difference between a contract for the sale of goods, as contemplated by § 7-2-719(3), and a contract for services, such as this one. Thus, the arbitration clause is not unconscionable solely because it purports to preclude a remedy for "indirect, special *535 or consequential damages or loss of anticipated profits." The issue of the enforceability of the separate provision of the contract entitled "Disclaimer," which reads, "Terminix Disclaims any Liability for Special, Incidental, or Consequential Damages," is not before us.

B. Accessibility
The Leonards also contend that the arbitration clause is unconscionable, because, they say, it precludes a class action, which, they argue, is the only way plaintiffs with claims as small as the Leonards' claims can obtain relief. More specifically, they state:
"While a plaintiff with an individual $75,000 claim can probably get a lawyer on a contingent fee to represent him or her, ordinary persons such as the Leonards with a claim less than $500 could not, and thus would have to face Terminix's well-financed, aggressive battery of experienced lawyers by himself or herself in an arbitration, or else pay a lawyer by the hour for legal representation, which makes no sense in relation to the small dollar value claims at issue."
Leonards' Brief, at 28 n. 28 (emphasis added).
This argument stands on better ground.[2] The Leonards base their contention of economic feasibility on what they describe as the "small dollar value of the claims of the Leonards (less than $500)." Leonards' Brief, at 21. According to the Leonards, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") applicable to this proceeding[3] include: (1) a $500 arbitration filing fee; (2) a minimum $150 administrative fee per party; (3) an administrative fee of $150-$250 per day per party for each hearing date; (4) one-half of the average arbitrator's fee of $700 per day; (5) one-half the cost of the charge for a meeting room; and (6) the cost of an attorney.
Terminix responds to this argument by pointing to the allegation in the Leonards' complaint seeking unspecified damages for emotional distress as well as punitive damages, thereby making the claims of sufficient value to avoid the economic-unfeasibility argument. This contention fails for two reasons. First, if the arbitration clause is enforced, Terminix will be entitled, as we held in Part I.A. above, to assert that portion of the arbitration clause barring the Leonards from recovering "indirect, special, or consequential damages." Second, even if the arbitration clause is deemed unconscionable and therefore unenforceable, Terminix will have the opportunity to urge application of the authorities relied upon in Part I.A. above to uphold the similar contract provision, independent of the arbitration clause, disclaiming any liability for special, incidental, or consequential damages.
The Leonards observe that the rule of law for which they argue is not an attack on arbitration clauses alone, thus running afoul of Doctor's Associates, Inc. v. Casarotto, *536 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); their position, they say, would be the same if the contract merely prohibited assertion of claims on a class-wide basis. The cases from the United States Supreme Court announcing favorable disposition toward the enforcement of agreements requiring the settlement of disputes by arbitration are numerous. See, e.g., EEOC v. Waffle House, Inc., 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, also plentiful are cases from the United States Supreme Court recognizing the importance of relief by way of a class action. See, e.g., Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). See also to the same effect Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); and Eisen v. Carlisle & Jacquelin, U.S. 156, 161, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).
Several courts confronting this issue have been favorably disposed to the view that an arbitration clause that defeats the prospect of class-action treatment in a setting where the practical effect affords the defendant immunity is unconscionable. See, e.g., Knepp v. Credit Acceptance Corp. (In re Knepp), 229 B.R. 821, 842 (Bankr. N.D.Ala.1999) ("If this approach [no classwide arbitration] prevails, the pervasive use of arbitration agreements in consumer contracts could have the effect of eliminating class actions as an option available to aggrieved consumers. If class actions are no longer an option, the vast majority of consumer claims involving relatively small sums of money on an individual basis will be left without a remedy."); Keating v. Superior Court of Alameda County, 31 Cal.3d 584, 609-10, 645 P.2d 1192, 1207, 183 Cal.Rptr. 360, 375 (1982) ("If the right to a classwide proceeding could be automatically eliminated in relationships governed by adhesion contracts through the inclusion of a provision for arbitration, the potential for undercutting these class action principles, and for chilling the effective protection of interests common to a group, would be substantial.... If, however, an arbitration clause may be used to insulate the drafter of an adhesive contract from any form of class proceeding, effectively foreclosing many individual claims, it may well be oppressive and may defeat the expectations of the nondrafting party."), rev'd in part and appeal dismissed in part on other grounds, Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Rollins, Inc. v. Foster, 991 F.Supp. 1426, 1437 (M.D.Ala.1998); Patterson v. ITT Consumer Fin. Corp., 14 Cal.App.4th 1659, 18 Cal.Rptr.2d 563 (1993); Williams v. Aetna Fin. Co., 83 Ohio St.3d 464, 473, 700 N.E.2d 859, 866-67 (1998); State of West Virginia ex rel. Dunlap v. Berger, 211 W.Va. 549, 567 S.E.2d 265 (2002); and Ting v. AT & T, 182 F.Supp.2d 902, 938-39 (N.D.Cal.2002) ("This lawsuit is not about arbitration.... [Under the guise of requiring arbitration, the company] was actually rewriting substantially the legal landscape on which its customers must contend.... [The company] sought to shield itself from liability ... by imposing Legal Remedies Provisions that eliminate class actions, sharply curtail damages in cases of misrepresentation, fraud, and other intentional torts, cloak the arbitration process with secrecy and place significant financial hurdles in the path of *537 a potential litigant. It is not just that [the company] wants to litigate in the forum of its choicearbitration; it is that [the company] wants to make it very difficult for anyone to effectively vindicate her rights, even in that forum. That is illegal and unconscionable....").
Justice Woodall's dissenting opinion accuses the Leonards of "repackaging of arguments considered and rejected by this Court in Green Tree Financial Corp. v. Wampler, 749 So.2d 409 (Ala.1999), Ex parte Thicklin, 824 So.2d 723 (Ala.2002), Johnnie's Homes, Inc. v. Holt, 790 So.2d 956 (Ala.2001), and Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala.1998), namely, that expenses the plaintiffs could incur in arbitration render that forum prohibitively expensive." 854 So.2d at 542. Continuing, the dissenting opinion concludes, "They can cite no case in which this Court has held an arbitration clause to be unconscionable on the ground of financial hardship." 854 So.2d at 542.
The Leonards contend that the arbitration clause mandates a procedure involving costs so great in comparison to the potential recovery that the injured person is effectively precluded from a remedy. Thus, the "repackaging" actually occurs in the dissenting opinion with its reliance upon cases holding that economic hardship to a person of limited resources does not render an arbitration agreement unconscionable. Such authority does not foreclose a contention that an arbitration clause is unconscionable because economic feasibility precludes presentation of the claim. The line of cases rejecting challenges to arbitration clauses on the ground of unconscionability because of the impecunious circumstances of the plaintiff is distinguishable. That the expenses of arbitration would exceed the amount in controversy is not a problem personal or peculiar to any particular consumer but is, rather, a phenomenon inherent in the transaction itself.[4] In other words, the impracticality of pursuing a claim for a small amount of money at a cost in excess of the value of the claim is just as much an obstacle to the wealthiest member of society as it is to a pauper. Indeed, a wealthy person oblivious to this reality may not long remain wealthy. Suffice it to say that while it is true that the Leonards can cite no case in which this Court has held an arbitration clause to be unconscionable on the ground of financial hardship, by the same token, Terminix can cite no case in which this Court has upheld an arbitration clause in the face of a challenge of unconscionability by reason of economic feasibility.
This Court has not been reluctant to declare arbitration agreements or portions thereof unconscionable in a proper case. See, e.g., Harold Allen's Mobile Home Factory Outlet, Inc. v. Butler, 825 So.2d 779 (Ala.2002) (arbitration clause held unconscionable on basis of unilateral appointment of the arbitrator); Ex parte Thicklin, supra, and Cavalier Mfg., Inc. v. Jackson, 823 So.2d 1237, 1245 (Ala.2001) (opinion on return to remand), cert. denied, 535 U.S. 986, 122 S.Ct. 1536, 152 L.Ed.2d 464 (2002) (arbitration clause that precluded punitive-damages award held unconscionable); American General Fin., Inc. v. Branch, 793 So.2d 738 (Ala.2000) (arbitration clause held unconscionable based on combination of unusually broad language, reservation of legal remedies for company but not for consumer, limitation of damages *538 award, and lack of meaningful choice to the consumer). The applicable standards for determining unconscionability are set forth in American General Finance, 793 So.2d at 748 whether there are (1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power. One of the criteria for finding a contract unconscionable is that it be "patently unfair." Layne v. Garner, 612 So.2d 404, 408 (Ala.1992).
The Leonards have shown that the Terminix contract is a contract of adhesion that has never been modified for any Alabama customer; they have also shown that they were not given any opportunity to accept or reject the arbitration provision. Nor were they given any quid pro quo for agreeing to arbitration and forgoing their constitutional right to a trial by jury. The Leonards are not sophisticated or wealthy consumers with equal bargaining power. The Leonards' choice was to accept the transfer of the Sibleys' contractual relationship with Terminix (with no added cost) or obtain the termite bond from another termite control company, which would have required payment of substantial added costs of at least $1,000 for a new termite treatment by that company. Moreover, Terminix's competitors in Alabama also used arbitration provisions in their contracts at the time the Leonards bought their home.
The limitation upon recovery of "indirect, special, and consequential damages or loss of anticipated profits" in the arbitration clause and elsewhere in the agreement and the preclusion of eligibility for class-action treatment by inserting a provision requiring arbitration deprive the Leonards of a meaningful remedy and lead us to conclude that Terminix has extracted unreasonably favorable and patently unfair terms in its contract of adhesion. Consequently, the arbitration clause is unconscionable and unenforceable.
The fact that the Leonards are deprived of a meaningful remedy leads to the defect in the dissent's reliance upon the Constitution of Alabama of 1901 to support Terminix's substantive contractual right to escape the applicability of Rule 23, Ala. R. Civ. P.[5] Justice Woodall states in his dissent: "Allowing the Leonards to pursue a class action in derogation of the arbitration agreement would elevate Rule 23, Ala. R. Civ. P., which authorizes and governs such actions, above the substantive, contractual rights of Terminix. The effect would be precisely what the Constitution [Ala. Const. of 1901, Amend. 328, § 6.11] prohibitsit would `abridge' or `modify' the substantive rights of Terminix." 854 So.2d at 543. The fallacy of this argument is that it assumes that Terminix has a right to enforce a contract under the circumstances here presented. The public policy of Alabama as articulated by § 13 of the Constitution of Alabama of 1901 guarantees that "every person, for any injury done him,... shall have a remedy by due process of law." As previously noted, one of the criteria for finding a contract unconscionable is that it be "patently unfair." Layne v. Garner, 612 So.2d at 408. The guaranty of § 13 is well-suited to informing our judgment on the issue of unfairness. Resort to § 13, instead of recognizing a "substantive due-process right" as Justice Woodall contends in his dissent, comports with settled principles guiding our judgment on the issue of unconscionability.
Title 9 U.S.C. § 2 calls for the enforcement of arbitration agreements "save upon *539 such grounds as exist at law or in equity for the revocation of any contract." The invocation of Alabama law relating to unconscionability to declare an arbitration agreement unconscionable and thereby avoid relegation to arbitration of small claims not reasonably susceptible to meaningful redress in that forum does not impermissibly discriminate against arbitration contrary to Doctor's Associates, Inc. v. Casarotto, supra. This is so because a conclusion of unconscionability could apply with equal force to an effort to enforce a contract provision silent as to arbitration yet prohibiting participation in a class action under similar circumstances.
This arbitration agreement is unconscionable because it is a contract of adhesion that restricts the Leonards to a forum where the expense of pursuing their claim far exceeds the amount in controversy. The arbitration agreement achieves this result by foreclosing the Leonards from an attempt to seek practical redress through a class action and restricting them to a disproportionately expensive individual arbitration.

II. Conclusion
For the foregoing reasons, the trial court erred in holding that the arbitration clause in the Plan was valid and enforceable. Because it erroneously granted Terminix's motion to compel arbitration, its order is reversed and the cause is remanded for further proceedings, consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, LYONS, JOHNSTONE, and HARWOOD, JJ., concur.
SEE, BROWN, WOODALL, and STUART, JJ., dissent.
SEE, Justice (dissenting).
I respectfully dissent.
The Leonards agreed to a termite-protection contract with Terminix that requires that they arbitrate any dispute arising under the contract under the commercial arbitration rules of the American Arbitration Association ("AAA"). In 1997, the Leonards sued Terminix, alleging statutory violations and negligence, breach-of-fiduciary-duty, and breach-of-contract claims. Terminix moved to compel arbitration under the terms of the termite-protection contract. The Leonards now seek to escape their contractual obligation to Terminix, arguing that the arbitration clause in their contract is unconscionable because, they say, it effectively affords them no remedy. They argue that the cost of arbitration (at least $1,100) is greater than the dollar value of their damage claims ($500), thereby making any remedy offered in arbitration illusory.[6] The Leonards argue that a class action, barred by the arbitration clause, offers the only meaningful means of remedy, given the small value of their damage claims.
The Leonards' argument hinges on the assertion that the arbitration clause requires them to pay such prohibitively high arbitration costs that the arbitral forum *540 affords them no meaningful remedy and that the clause requiring them to submit claims to that forum is thus unconscionable. Whether the arbitration clause is unconscionable, therefore, depends on what the arbitration clause requires of the Leonards and of Terminix.
"The fundamental determination in the legal construction of contracts is the real intention of the parties." Parr v. Godwin, 463 So.2d 129, 132 (Ala.1984). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc. 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "[P]arties are generally free to structure their arbitration agreements as they see fit." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).
"Under those established rules of contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contact and that will give effect and meaning to all of its terms."
Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000).
The majority accepts on its face the Leonards' assertion that the arbitration clause in the termite-protection contract requires them to pay prohibitively high arbitration costs[7] and reasons from that premise that the arbitration clause is unconscionable because it denies the Leonards a remedy.[8] In fact, the contract does not impose arbitration costs on the Leonards.
The arbitration clause reads:
"ARBITRATION. The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to this agreement shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association. The decision of the arbitrator shall be a final and binding resolution of the disagreement which may be entered as a judgment by any court of competent jurisdiction. Neither party shall sue the other where the basis of the suit is this agreement other than for enforcement *541 of the arbitrator's decision. In no event shall either party be liable to the other for indirect, special or consequential damages or loss of anticipated profits."
The contract itself is silent as to who must pay the costs of arbitration. When a contract's terms are ambiguous, this Court must use rules of construction to resolve the ambiguity. Homes of Legend, 776 So.2d at 746. Under those rules, this Court must accept the construction that will uphold the contract. Id.
In Cole v. Burns International Security Services, 105 F.3d 1465, 1467-69 (D.C.Cir. 1997), an employee filed claims under Title VII of the Civil Rights Act of 1964. The employer moved to compel arbitration pursuant to a clause in the employment contract that read, in pertinent part:
"[I]n the event that you seek relief in a court of competent jurisdiction for a dispute covered by this Agreement, the Company may, ... at its option, require all or part of the dispute to be arbitrated by one arbitrator in accordance with the rules of the American Arbitration Association. You agree that the option to arbitrate any dispute is governed by the Federal Arbitration Act, and fully enforceable."
105 F.3d at 1469. The Cole court considered whether the arbitration clause was unconscionable because it could be interpreted to require Cole to pay arbitration fees. The court held:
"These [arbitration] fees would be prohibitively expensive for an employee like Cole, especially after being fired from his job, and it is unacceptable to require Cole to pay arbitrators' fees, because such fees are unlike anything that he would have to pay to pursue his statutory claims in court."
105 F.3d at 1484 (footnote omitted). The court continued, however:
"In sum, we hold that Cole could not be required to agree to arbitrate his public law claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses. In light of this holding, we find that the arbitration agreement in this case is valid and enforceable. We do so because we interpret the agreement as requiring Burns Security to pay all of the arbitrator's fees necessary for a full and fair resolution of Cole's statutory claims."
105 F.3d at 1485. The Cole court stated that the AAA rules are silent as to who must bear the costs of arbitration. Id. The Cole court then held that because the usual rules of contract construction require a court to interpret a contract so as to make it lawful, it must require arbitration and tax the costs to Burns Security, rather than find the arbitration clause unconscionable and void the contract. Id.
Accepting the majority's conclusion in this case that if the Leonards are required to pay the costs of the arbitration, they are denied a meaningful remedy,[9] then, following the Cole court's reasoning, we should read the Leonards' termite-protection contract as requiring that Terminix pay the costs of arbitration, thereby relieving the Leonards of that financial burden and giving effect to the termite-protection contract.[10]
The Leonards' contract, like Cole's contract, is silent as to who must pay the *542 arbitration costs. The Leonards' contract, like Cole's contract, incorporates by reference the AAA's commercial arbitration rules. Those rules permit the arbitrator to assess all of the costs against one party. See Cole, 105 F.3d at 1485. A construction of the arbitration clause that taxes the costs to Terminix relieves the Leonards of any onerous financial burden associated with arbitration, thus affording them a remedy for their claims and allowing the issues to be resolved in the manner agreed by the parties to the contract. I would so construe the contract and affirm the trial court's order compelling arbitration. Therefore, I must dissent.
WOODALL, Justice (dissenting).
Because the lead opinion incorrectly concludes that the arbitration agreement is unconscionable, and, therefore, unenforceable, I respectfully dissent. The Leonards contend that the arbitration clause mandates a procedure involving costs so great in comparison to the potential recovery that the injured person is effectively precluded from a remedy. This argument is essentially a repackaging of arguments considered and rejected by this Court in Green Tree Financial Corp. v. Wampler, 749 So.2d 409 (Ala.1999), Ex parte Thicklin, 824 So.2d 723 (Ala.2002), Johnnie's Homes, Inc. v. Holt, 790 So.2d 956 (Ala. 2001), and Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala.1998), namely, that expenses the plaintiffs could incur in arbitration render that forum prohibitively expensive. They can cite no case in which this Court has held an arbitration clause to be unconscionable on the ground of financial hardship. Unless this Court overrules those cases, which the lead opinion does not purport to do, it is clear that the Leonards should be compelled to arbitrate their individual claims.
Thus, the inclusion of a class-action argument adds little to the analysis. An arbitration clause is not unconscionable merely because it precludes class representation by a party to the contract. "`[The] class action is a procedural device created solely for the purposes of litigation,' " Ex parte Holland, 692 So.2d 811, 814 (Ala.1997) (quoting Adams v. Robertson, 676 So.2d 1265, 1268 (Ala.1995) (emphasis added)), whereas "[t]he right to [compel] arbitration is contractual and therefore substantive" Sanders v. Robinson Humphrey/American Express, Inc., 634 F.Supp. 1048, 1065 (N.D.Ga.1986) (emphasis added), aff'd in part, rev'd in part on other grounds sub nom. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718 (11th Cir.1987). "Congress did not intend that procedural class action certification be used to abrogate the contractual rights employed in the execution of the arbitration agreements by the defendants...." 634 F.Supp. at 1065. "A procedural device aggregating multiple persons' claims in litigation does not entitle anyone to be in litigation; a contract promising to arbitrate the dispute removes the person from those eligible to represent a class of litigants." Caudle v. American Arbitration Ass'n, 230 F.3d 920, 921 (7th Cir.2000).[11]
Indeed, this Court is forbidden by the Alabama Constitution of 1901 from using a procedural rule to "abridge, enlarge or modify the substantive right of any party." Ala. Const.1901, Amend. 328, § 6.11 (emphasis added). More specifically, in investing this Court with rule-making power, the people of Alabama stated: "The supreme court shall make and promulgate rules governing the administration of all *543 courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party ...." Id. Allowing the Leonards to pursue a class action in derogation of the arbitration agreement would elevate Rule 23, Ala. R. Civ. P., which authorizes and governs such actions, above the substantive, contractual rights of Terminix. The effect would be precisely what the Constitution prohibitsit would "abridge" or "modify" the substantive rights of Terminix.
In fact, I do assume that Terminix has a right to enforce its substantive contract provisions and that nothing in Ala. Const. 1901, § 13, prevents it from doing so. A class action is a procedure, not, as the main opinion implies, a remedy. The unstated premise of the lead opinion is that the Constitution of Alabama contains a substantive due-process right to litigate as a class representative. It cites no authority for such a premise. If the Constitution contains no such guarantee, then the main opinion conflicts with Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (states may not discriminate against arbitration). Because I find no such due-process right in the Alabama Constitution, I believe the Court is merely discriminating against arbitration. Therefore, I respectfully dissent.
BROWN and STUART, JJ., concur.

On Application for Rehearing
PER CURIAM.
On rehearing, Terminix argues that this Court erred on original submission in failing to consider that Walter Leonard, Jr., and Evalina Leonard's claim would be subject to the American Arbitration Association's Supplementary Procedures for Consumer-Related Disputes, which Terminix says were effective March 1, 2002 ("the AAA consumer rules"). Those rules, Terminix says, would allow the Leonards to bring their claim in small-claims court or to have their claim arbitrated at a greatly reduced cost, thus providing them with a remedy other than a class-action proceeding. Terminix has also filed an alternative motion asking us to vacate our October 18, 2002, opinion on original submission and to dismiss the appeal as moot.
First, we point out that Terminix has not properly placed the AAA consumer rules before us. In April 2002, while this appeal was pending and long after the record had been completed, counsel for Terminix wrote a letter to the clerk of this Court enclosing a copy of the rules. That letter, in essence, requested this Court to consider matters not of record in this case. Counsel did not seek leave of the Court to supplement the record or to provide supplemental authority. If this Court were to entertain such a submission, then it should have been in the form of a motion filed pursuant to Rule 27, Ala. R.App. P. The Leonards moved to strike the letter and its enclosure, and this Court granted their motion. Terminix has now attached the AAA consumer rules as an exhibit to its brief in support of its application for rehearing. It is axiomatic that matters outside the record cannot be brought before this Court on appeal merely by attaching them to a brief. Given the controversy as to the effective date of the AAA consumer rules, we decline at this stage of the proceedings to take judicial notice of those rules.
Even if the AAA consumer rules were properly before us, however, we do not agree with Terminix that those rules would entirely resolve the questions presented by this case. We note that rules sponsored by the American Arbitration *544 Association ("the AAA") and tailored for use in arbitrating consumer disputes have been available since 1998, although the use of those rules was optional. In May 1998, the AAA published A Due Process Protocol for Mediation and Arbitration of Consumer Disputes, and on July 1, 1999, Arbitration Rules for the Resolution of Consumer-Related Disputes became effective. See Ex parte Thicklin, 824 So.2d 723, 734 (Ala.2002); Green Tree Fin. Corp. v. Wampler, 749 So.2d 409, 417 (Ala. 1999); and Ex parte Napier, 723 So.2d 49, 52 n. 2 (Ala.1998), in which this Court noted the availability of such rules.
Terminix contends that the AAA consumer rules effective in March 2002 are mandatory and that those rules apply to arbitrations taking place pursuant to contracts such as the one between Terminix and the Leonards, even though those contracts provide that arbitration is to be conducted pursuant to the AAA Commercial Rules. According to Terminix, the AAA Commercial Rules state that when they conflict with the AAA consumer rules, the consumer rules apply. Under the AAA consumer rules, Terminix says, the arbitration costs to consumers are greatly reduced. The Leonards dispute the effective date of the changes in the rules upon which Terminix relies, and they also dispute Terminix's claim that the new rules will reduce arbitration costs to consumers. The Leonards further contend that under certain circumstances, consumers who arbitrate may still be faced with costs that exceed small claims like theirs.
The parties disagree about when the rule changes promulgated by the AAA became effective, which rules would govern any arbitration proceeding in this case, and what effect, if any, the new rules would have on the adequacy of the remedies available to the Leonards, especially if a right to proceed in small-claims court is indeed available to them. Those issues have never been considered by the trial court, because the AAA consumer rules relied upon by Terminix became effective after the trial court's order granting arbitration. Before this Court should address those issues, they should be developed and resolved initially in the trial court, where Terminix, if it so chooses, can seek, in proceedings analogous to those available under Rule 60, Ala. R. Civ. P., consideration of the effect, if any, of the AAA consumer rules on this dispute.
APPLICATION OVERRULED; MOTION TO VACATE OPINION OF OCTOBER 18, 2002, AND TO DISMISS APPEAL DENIED.
MOORE, C.J., and HOUSTON, LYONS, JOHNSTONE, and HARWOOD, JJ., concur.
SEE, BROWN, WOODALL, and STUART, JJ., dissent.
NOTES
[1] The complaint does not allege that any plaintiff incurred any property damage, that is, that any plaintiff suffered a reinfestation of termites as a proximate result of the alleged statutory violations.
[2] Because of this Court's holding in Med Center Cars, Inc. v. Smith, 727 So.2d 9, 20 (Ala. 1998), that class-wide arbitration is not permitted absent an agreement permitting disposition of claims on such a basis and because there is no such agreement before us, the Leonards are relegated to pursuing their claims in an arbitral forum unless this Court determines the arbitration clause to be unconscionable under the circumstances here presented. In such event, the Leonards would have the option of pursuing their claims in the small-claims court or in the circuit court individually and as representatives of a class. The propriety of certification of such a class is not before us.
[3] Terminix has not asked that the AAA's Consumer Arbitration Rules be substituted for the Commercial Arbitration Rules specified in the arbitration clause.
[4] The Leonards actually disclaim any reliance upon economic hardship to them. In their reply brief they state: "The Leonards (although relatively poor) cannot claim poverty, so they could not seek a reduction of fees based on financial hardship." Reply brief, at 6.
[5] As previously noted, the Leonards have the option of appearing in the small-claims court, if they so choose. See note 2.
[6] In addition to money damages, the Leonards seek injunctive relief that would compel Terminix to alter its reinspection practices. The Leonards argue in their brief to this Court that changes in Terminix's practices are "vital to protect customers like the Leonards against harm and to catch termites at the earliest stages before serious damage is done." (Leonards' Brief at 22.) The Leonards assert that absent an injunction, Terminix's poor inspection practices likely will cause the Leonards to pay substantial out-of-pocket costs to repair termite damage to their home sometime in the future. Id. Insofar as the Leonards' assertion is correct, the actual "value" of the Leonards' claims is greater than $500.
[7] The majority states that this case is not about the financial hardship on the Leonards of arbitrating the claims, but about the fact that "the expenses of arbitration would exceed the amount in controversy...." 854 So.2d at 537. Implicitly, therefore, the majority accepts the Leonards' argument that the contract requires the Leonards to pay the costs of arbitration.
[8] The Leonards present their argument as an either/or choiceeither they must be allowed to pursue a class action, or the prohibitive costs of arbitration deny them an effective remedy. The majority opinion expressly rejects the class-action alternative suggested by the Leonards. The majority does not order the trial court to certify a class action, but states that "the Leonards would have the option of pursuing their claims in the small-claims court or in the circuit court individually and as representatives of a class. The propriety of certification of such a class is not before us." 854 So.2d at 535 n. 2. Indeed, the majority states that "a conclusion of unconscionability could apply with equal force to an effort to enforce a contract provision silent as to arbitration yet prohibiting participation in a class action under similar circumstances." 854 So.2d at 539. Indeed, the majority reverses the trial court's arbitration order and remands the case for additional proceedings. Thus, the majority grounds its holding on the fact that the fees unique to arbitration make that forum such an inhospitable place for the Leonards to seek a remedy that the arbitration provision is unconscionable.
[9] I specifically do not reach that issue.
[10] Terminix, in fact, understands the contract to work this way. They argue in their brief to this Court: "Terminix offered evidence in the Circuit Court that when Terminix arbitrates disputes with customers, the costs of arbitration are almost always assessed against Terminix, even when Terminix prevails on the merits." (Terminix's Brief at 46.)
[11] In other words, plaintiffs do not enjoy a general, nonwaivable right to serve as a class representative.