Reather LAWRENCE, Kari Brown and
Abe Hunter III, Plaintiffs,

v.

HOUSEHOLD BANK (SB), N.A. and
Household Credit Services, Inc.,
Defendants.

Civil Action No. 2:03cv280–T (WO).

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 30, 2005.

Christopher W. Weller, George L. Beck, Jr., James N. Walter, Jr., Capell Howard PC, Montgomery, AL, George C. Douglas, Jr., Law Office of George C. Douglas, Jr., Birmingham, AL, Jerry L. Thornton, Law Office of Jerry L. Thornton, Hayneville, AL, for Plaintiffs.

Andrew J. Noble, III, Ronald H. Kent, Jr., Bradley Arant Rose & White LLP, Birmingham, AL, Christopher R. Lipsett,

Matthew Phineas Previn, Wilmer Cutler Pickering Hale & Dorr LLP, New York, NY, for Defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiffs Reather Lawrence, Kari Brown, and Abe Hunter III brought this suit against defendants Household Bank (SB), N.A., and Household Credit Services, Inc. in an Alabama state court, alleging violations of the federal Fair Credit Billing Act (FCBA), 15 U.S.C.A. §§ 1666–1666j, as enforced by the Truth in Lending Act (TILA), 15 U.S.C.A. § 1640. Defendants removed the action pursuant to 28 U.S.C.A. §§ 1441 and 1446; this court's jurisdiction is properly invoked under 28 U.S.C.A. § 1331.

Defendants filed a motion to stay the proceedings pending arbitration under the Federal Arbitration Act (FAA), 9 U.S.C.A. § 1–16. In turn, plaintiffs filed a motion seeking a jury trial on the question of whether there exist agreements to arbitrate in this case. In a judgment and opinion dated September 13, 2004, *Lawrence v. Household Bank, N.A.*, 343 F.Supp.2d 1101 (M.D.Ala.2004) (Thompson, J.), this court granted defendants' motion to stay as to Brown's and Hunter's claims, and denied the motion as to Lawrence's claims.

This cause is now before the court on Brown's and Hunter's motion to alter, amend or vacate the judgment pursuant to Fed.R.Civ.P. 59(e). For the following reasons, the motion will be denied.

## I. STANDARD

■ Federal Rule of Civil Procedure 59(e) authorizes a motion to alter or amend a judgment after its entry. Rule 59(e) provides no specific grounds for relief, and "the decision to alter or amend judgment is committed to the sound discretion of the district judge." *American Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir.1985). There are four basic grounds for granting a Rule 59(e) motion: (1) manifest errors of law or fact upon which the judgment was based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice in the judgment; and (4) an intervening change in the controlling law. 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed.1995). Rule 59(e) may not be used to relitigate old matters or to present arguments or evidence that could have been raised prior to judgment. *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir.1992). Furthermore, a judgment will not be amended or altered if to do so would serve no useful purpose. Wright, Miller & Kane, *supra*.

## II. BACKGROUND

In their brief in opposition to the defendants' motion to stay proceedings in favor of arbitration, plaintiffs originally argued that the arbitration clauses contained in Hunter's and Brown's credit cardholder agreements were unconscionable under "generally applicable Alabama contract law" because they effectively precluded them from bringing an action to enforce their rights.[1] Citing *Leonard v. Terminix Int'l Co.*, 854 So.2d 529 (Ala.2002), plaintiffs argued that their card agreements barred them from bringing class arbitrations and that the cost of bringing individual arbitration claims would exceed any anticipated amount of recovery.[2]

---

1. Plaintiffs' brief in opposition to defendants' motion to stay proceedings (Doc. No. 18), p. 37.

2. *Id.* at 38–39.

Although the cardholder agreement sent to both Brown and Hunter indicated that it will be governed by federal and Nevada law, plaintiffs specifically and emphatically argued in their brief that the court should apply Alabama law, and not Nevada law, to the issue of unconscionability because the agreements violated Alabama public policy. The plaintiffs contended,

"Household may argue that its contract is governed by Nevada law, not Alabama law. However, a federal district court applies the choice-of-law rules of the state in which it sits. *Allison v. Vintage Sports Plaques,* 136 F.3d 1443, 1446 (11th Cir.1998).... *Although parties may agree that another state's law will govern their contract, such an agreement is ineffective where the chosen state's law conflicts with the law or public policy of the state in which the contract is made.*" [3]

Several paragraphs later, plaintiffs further argued that Alabama law would apply even if Nevada's law did not conflict with this State's public policy, because Brown and Hunter assented to the cardholder agreements in Alabama.[4] They noted,

"Alabama's choice-of-law rules require that, because the plaintiffs are Alabama residents, the threshold question of unconscionability must be determined by the substantive law of Alabama. *Bryant v. Cruises, Inc.,* 6 F.Supp.2d 1314, 1321, n. 5 (N.D.Ala.1998) (Alabama's choice-of-law rule provides that the law of the state where the contract was formed governs questions regarding the validity and interpretation of the contract.)." [5]

Applying Alabama law, this court subsequently disagreed with plaintiffs' argument, holding that the arbitration clauses contained in Hunter's and Brown's cardholder agreements were not unconscionable and that this case is distinguishable from *Leonard* because, unlike in *Leonard,* Hunter's and Brown's arbitration agreements do not limit their ability to recover costs and fees. 343 F.Supp.2d at 1112.

Now that the court has found that the cardholder agreements are not unconscionable under Alabama law, Brown and Hunter attempt to argue that, in fact, Nevada law applies. Their motion to alter is based on *D.R. Horton, Inc. v. Green,* 120 Nev. 549, 96 P.3d 1159 (2004), a case released by the Supreme Court of Nevada on the same day this court's opinion was rendered. Brown and Hunter seem to claim that *Horton,* which discusses the unconscionability of a home-purchase agreement, constitutes an intervening change in the controlling law.[6] They argue that, pursuant to Rule 59(e), this court should alter its judgment accordingly and find that their agreements to arbitrate are unconscionable under Nevada law.

For several reasons, the court finds the motion meritless.

## III. DISCUSSION

### A.

■ As stated above, Rule 59(e) may not be used to relitigate old matters or to present arguments or evidence that could have been raised prior to judgment. *O'Neal v. Kennamer,* 958 F.2d 1044, 1047

---

**3.** *Id.* at 43 (emphasis in original).

**4.** Elsewhere in their brief, plaintiffs argued in the alternative that they had not in fact assented to the agreement at all and thus no contract had been formed. *Id.* at 8–20.

**5.** *Id.* at 44.

**6.** Brown and Hunter do not actually specify in their motion the grounds on which they are seeking Rule 59(e) relief. The court assumes that Brown and Hunter intend to argue that there has been an intervening change in the controlling law.

(11th Cir.1992). Although they could have argued in their opposition to defendants' motion to stay that the cardholder agreements were governed by Nevada law, plaintiffs instead elected to argue that Alabama law applies to their cardholder agreements. The court suspects that Brown and Hunter now argue that Nevada law applies simply because they are displeased with the result of their earlier arguments. .

■ To the extent that Brown and Hunter implicitly suggest that the court erred in applying Alabama law in its analysis of the unconscionability of the arbitration clause, the court disagrees. As noted by the plaintiffs themselves, a federal district court applies the choice-of-law rules of the State in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Under Alabama law, the law of the State wherein the contract was executed governs questions regarding the validity and interpretation of the contract, including the issue of unconscionability. *See, e.g., American Nonwovens, Inc. v. Non Wovens Engineering, S.R.L.*, 648 So.2d 565, 567 (Ala.1994).

As this court has previously noted, Alabama law dictates that a credit cardholder's use of her card signals her assent to the terms of the credit card agreement. *Taylor v. First North American Nat. Bank*, 325 F.Supp.2d 1304, 1313 (Thompson, J.) (citing *SouthTrust Bank v. Williams*, 775 So.2d 184, 189 (Ala.2000)). Thus, the cardholder agreements mailed to Brown and Hunter were effectively executed *in Alabama* when Brown and Hunter continued to use their respective credit cards *in Alabama* upon receipt of the agreements; *Alabama* law therefore dictates whether the agreements are unconscionable.

## B.

■ Furthermore, even if Nevada law did govern the issue of unconscionability, the cardholder agreements in this case would still be fully enforceable. *Horton* does not purport to change Nevada law and in no way suggests that the agreements in this case are, or ever were, unconscionable under Nevada law. Furthermore, the contract at issue in *Horton* is entirely distinguishable from the cardholder agreements entered into by Brown and Hunter.

*Horton* did not involve credit card agreements, but rather a home purchase-agreement containing a binding arbitration provision. The Nevada Supreme Court found the agreement to be procedurally unconscionable for several reasons. First, the court noted that, in contrast to other important terms of the contract, the arbitration provision was buried on the back page of the agreement in extremely small font and lowercase letters. *Horton*, 96 P.3d at 1161. In addition, the court noted that the provision failed to put the home purchasers on notice that they were agreeing to forgo important rights under state law, and failed to inform the purchasers of the costs associated with arbitration. The court also noted that the sales agent downplayed the arbitration provision to the purchaser, suggesting that it was simply standard language in a form agreement. *Id.* at 1165. In addition, the Nevada court found that two provisions of the arbitration provision rendered it substantively unconscionable: a $ 10,000 penalty for refusing to arbitrate, and a requirement that each party pay equally for the costs of arbitration. *Id.*

The cardholder agreements sent to Brown and Hunter share none of the features of the home-purchase agreement in *Horton*. While the arbitration provision in the *Horton* agreement was hidden in fine

print on the back of the home-purchase agreement, the arbitration clause in Brown's and Hunter's agreements is included in the main body of the document entitled "Important Changes to Your Sears National Bank Sears Home Improvement Account Cardholder Account and Security Agreement." [7] In contrast to the *Horton* agreement, the word "ARBITRATION" is written in bold, capital letters in Brown's and Hunter's agreements at the beginning of the paragraph containing the arbitration clause.[8]

Furthermore, whereas the *Horton* agreement failed to notify the purchaser that she was giving up important rights by agreeing to arbitration, the end of the arbitration clause in Brown's and Hunter's agreements contains the following notice in bold, capital letters:

"THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY." [9]

In addition, no representative of Household Bank represented to Brown or Hunter that the arbitration clause in the agreements was simply standard form language. Finally, unlike the *Horton* agreement, Brown's and Hunter's agreements do not contain a hefty penalty provision for failing to arbitrate, nor do they require each party to pay equally for the cost of arbitration. To the contrary, the clause in Brown's and Hunter's agreements provides that the cardholder will pay the first $ 50 of the filing fee and further indicates that,

> "at your request we will pay the reminder of the filing fee and any administrative hearing fees charged by the arbitration administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees." [10]

In sum, the differences between the agreement at issue in *Horton* and the cardholder agreements in the current case are myriad. Thus, the court concludes that, even if Nevada law applied in this case, *Horton* is inapplicable to Brown's and Hunter's cardholder agreements; *Horton* in no way suggests that Brown's and Hunter's cardholder agreements are unconscionable under Nevada law; and *Horton* does not provide a basis for this court to alter its judgment.

## IV.  CONCLUSION

For the reasons stated above, it is ORDERED that plaintiffs Kari Brown's and Abe Hunter's motion to alter, amend, or vacate judgment (Doc. No. 54) is denied.

---

7. Motion to stay proceedings in favor of arbitration (Doc. No. 11), Ex. B., ¶ 15.

8. *Id.*

9. *Id.*

10. *Id.*