STUART, Justice.
Joe Robertson appeals the order of the Jefferson Circuit Court holding that his claims against Mount Royal Towers, a domestic nonprofit corporation that owns and operates a senior-living facility in Birmingham known as Mount Royal Towers, are subject to an arbitration agreement and compelling Robertson to arbitrate those claims. We affirm.
I.
In November 2008, Robertson was admitted as a resident to the skilled-nursing unit at Mount Royal Towers. During the admission process, Robertson executed a number of documents, including two optional arbitration agreements — one to govern medical-malpractice disputes and one to govern all other disputes. The arbitration agreement governing medical-malpractice disputes provided, in relevant part:
“It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by Alabama law and not by a lawsuit or court process except as Alabama law provides for judicial review of arbitration proceedings.”
(Emphasis added.) The arbitration agreement governing all other disputes provided, in relevant part:
“The resident and the facility further agree that any dispute arising between them from torts, contracts, or otherwise, including any claims for punitive damages and any actions brought on behalf of the resident by third-parties, but excepting claims pertaining to the amount of the facility’s charges, shall be submitted upon the request of either the resident or the facility to arbitration as provided by Alabama law.”
(Emphasis added.) Notably, both arbitration agreements provided that disputes would be submitted “to arbitration as provided by Alabama law.”
On July 26, 2010, Robertson was transported by ambulance to St. Vincent’s Hospital in Birmingham, where he was subsequently admitted to be treated for an infection. On approximately August 11, 2010, St. Vincent’s notified Mount Royal Towers that Robertson was being released; however, Mount Royal Towers *864 informed the hospital that it no longer had a bed available for Robertson and that it could not accept him back as a resident of the facility. Space was thereafter found in a different facility in the Birmingham area, and Robertson moved to that facility upon his release from St. Vincent’s.
On March 2, 2012, Robertson sued Mount Royal Towers, asserting various claims based on the failure of Mount Royal Towers to accept him back as a resident upon his discharge from St. Vincent’s in August 2010. On April 9, 2012, Mount Royal Towers moved the trial court to stay the action and to compel Robertson to submit his dispute to arbitration pursuant to the terms of the arbitration agreements he had signed. On May 15, 2012, Robertson filed a response to that motion, arguing that the trial court should not compel arbitration because: 1) the arbitration agreements[1] specifically state that disputes between the parties would be submitted to arbitration “as provided by Alabama law” and, Robertson argues, pre-dispute arbitration agreements are not enforceable under Alabama — as opposed to federal — law; and 2) the arbitration agreements are too vague inasmuch as they do not provide details regarding the selection of an arbitrator and the applicable rules of arbitration. Mount Royal Towers thereafter filed a reply responding to Robertson’s arguments, and a hearing on the issue of arbitrability was held on May 17, 2012. On October 26, 2012, the trial court entered an order granting Mount Royal Towers’ motion to stay the action and compelling Robertson to submit his claims to arbitration. Robertson’s subsequent motion to alter, amend, or vacate that order was denied by the trial court, and on December 7, 2012, Robertson filed his notice of appeal to this Court.
II.
The standard by which we review an order granting a motion to compel arbitration is well settled:
“We conduct a de novo review of a trial court’s order compelling arbitration. Smith v. Mark Dodge, Inc., 934 So.2d 875, 378 (Ala.2006).
“‘The party seeking to compel arbitration must first prove both that a contract calling for arbitration exists and that the contract evidences a transaction involving interstate commerce .... Once this showing has been made, the burden then shifts to the nonmovant to show that the contract is either invalid or inapplicable to the circumstances presented.’
“Smith, 934 So.2d at 378.”
Ritter v. Grady Auto. Group, Inc., 973 So.2d 1058, 1060-61 (Ala.2007). There is no dispute in this case that “a contract calling for arbitration exists and that the contract evidences a transaction involving interstate commerce.” Id. The only issue before us is, accordingly, whether Robertson has met his burden of showing that the arbitration agreements he executed are “inapplicable to the circumstances presented.” Id.

III.

Robertson first argues that the language in the arbitration agreements providing that any disputes between him and Mount Royal Towers be submitted to arbitration “as provided by Alabama law” is tantamount to a choice-of-law provision de- *865 daring that Alabama law, not federal law, governs the interpretation and application of the arbitration agreements. And, Robertson continues, because § 8-1-41(3), Ala. Code 1975, provides that “[a]n agreement to submit a controversy to arbitration” cannot be specifically enforced, it was error for the trial court to compel arbitration of his claims. We disagree.
We first note that this Court has previously held that similar choice-of-law clauses applying to a contract as a whole — as opposed to an arbitration provision containing its own choice-of-law clause — do not have the effect Robertson urges. For example, in Jim Walter Homes, Inc. v. Saxton, 880 So.2d 428, 433 (Ala.2003), we stated:
“Saxton’s ... final argument is that the arbitration agreement is negated by the choice-of-law provision in the contract, which states the contract is to be governed by the laws of the State of Alabama. Saxton argues that because under § 8-1-41(3), Ala.Code 1975, agreements to submit future controversies to arbitration cannot be specifically enforced, the arbitration agreement cannot be enforced. However, in Allied-Bruce Terminix [Cos. v. Dobson, 513 U.S. 265, 270 (1995) ], the Supreme Court of the United States held that the Federal Arbitration Act preempts § 8-1-41(3) of the Alabama Code in a contract, like this one, that involves interstate commerce.”
See also Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 747 n. 9 (Ala.2000) (“Moreover, even if the choice-of-law clause were interpreted as including Alabama substantive law, namely, Ala.Code 1975, § 8-1-41(3), and, thereby, to conflict with the arbitration provision, that statute would be preempted because it conflicts with the [Federal Arbitration Act].”). Robertson, however, argues that a separate arbitration agreement specifically incorporating Alabama law is “completely different from an ordinary choice-of-law clause that appears in the main body of a contract....” Robertson’s brief, p. 13. Although we do not agree that the difference is so vast or so meaningful, we grant it further consideration because we have not specifically addressed this issue before.
The basic premise of Robertson’s argument — that parties that have entered into an arbitration agreement may elect within that agreement to proceed in arbitration subject to the law of a designated state as opposed to federal law as set forth in the Federal Arbitration Act (“FAA”), 9 U.S.C. § 1 et seq. — is generally correct. The United States Court of Appeals for the Fifth Circuit explained this principle in Ford v. NYLCare Health Plans of Gulf Coast, Inc., 141 F.3d 243, 247-49 (5th Cir.1998):
“We will consider as a threshold matter, therefore, whether parties may designate state law to govern the scope of an arbitration clause in an agreement otherwise covered by the FAA. Clearly, they can. The federal policy underlying the FAA ‘is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.’ Volt Information Sciences Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989) (emphasis added). Indeed, the FAA was specifically designed to place arbitration agreements ‘ “upon the same footing as other contracts.’” Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., I, 2 (1924)). And, ‘as with any other contract, the parties’ intentions control’ the ultimate interpretation of an arbitration clause. Mitsubishi [Motors Corp.
*866 v. Soler Chrysler-Plymouth, Inc.], 473 U.S. [614,] 626, 105 S.Ct. [3346,] 3354 [ (1985) ]. For ‘[arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.’ Volt, 489 U.S. at 479, 109 S.Ct. at 1256; see also Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l AFL-CIO, 370 U.S. 254, 256, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474 (1962) (‘the issue of arbitra-bility is a question for the courts and is to be determined by the contract entered into by the parties’); Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 709 (7th Cir.1994) (Posner, C.J.) (‘short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, ... parties are as free to specify idiosyncratic terms of arbitration as they are to specify any other terms in their contract’).
“Applying these principles, the Supreme Court has recognized that parties may use choice-of-law provisions to designate state law to provide the procedural rules under which arbitration will be conducted. See Volt, 489 U.S. at 476, 109 S.Ct. at 1254. In Volt, the parties had entered into an agreement with a general choice-of-law clause providing that the agreement be governed by the law of the place where the subject of the agreement was located, which in that case was California. See id. at 470, 109 S.Ct. at 1251. The issue was whether a procedural rule in the California Arbitration Act, not available under the FAA, should be interpreted to apply to the arbitration agreement. The Court held that it should, stating:
“ ‘Just as [the parties] may limit by contract the issues which they will arbitrate, ... so too may they specify the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the [FAA] would otherwise permit it to go forward.’
“Id. at 479, 109 S.Ct. at 1256. As the above-quoted passage demonstrates, the Court expressly analogized the parties’ freedom to limit contractually the scope of the arbitration clause with their freedom to select the rules under which arbitration will be conducted. It follows, then, that if the parties may select the rules of arbitration through the use of choice-of-law provisions, so too may they specify the law governing interpretation of the scope of the arbitration clause. Indeed, we think that to disregard the parties’ choice of law in this respect “would be quite mimical to the FAA’s primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms.’ Id.
“Consequently, the issue we must address here is whether the parties intended state law to govern the scope of their agreement to arbitrate. If the agreement between [the parties] demonstrates their intent to have the scope of the arbitration clause determined by Texas law, we must respect that choice. Only by rigorously enforcing arbitration agreements according to their terms, do we ‘give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA.’ Volt, 489 U.S. at 479, 109 S.Ct. at 1256.”
(Footnote omitted.) As Ford articulates, the fundamental reasoning behind this principle is that arbitration agreements are essentially just a species of contract and, “ ‘as with any other contract, the par *867 ties’ intentions control.’ ” 141 F.3d at 247 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The Supreme Court of the United States reiterated this concept in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. 662, 664, 130 S.Ct. 1758, 1774-75, 176 L.Ed.2d 605 (2010), when it cautioned courts and arbitrators interpreting arbitration clauses not to “lose sight of the purpose of the exercise: to give effect to the intent of the parties.”
With that goal in mind, it is evident that Robertson’s argument must fail. When interpreting a contract, a “court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms.” Homes of Legend, 776 So.2d at 746. Were we to accept Robertson’s argument that he and Mount Royal Towers, in agreeing to submit any disputes to arbitration “as provided by Alabama law,” intended to give effect to § 8-1-41(3), we would effectively be holding that, at the time they executed the arbitration agreements, they knowingly intended for those agreements to have no effect whatsoever.[2] That is unlikely; it is far more likely that Robertson and Mount Royal Towers intended for the arbitration agreements to be enforced in a manner consistent with Alabama law because, at that time, “the application of [§ 8-1-41(3) ] had been relegated to the rare case of a purely intrastate transaction that could not be said to ‘involve commerce’ in any way.” Birmingham News v. Horn, 901 So.2d 27, 44 (Ala.2004), overruled on other grounds, Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala.2008).[3]
Accordingly, we reject Robertson’s argument that the language in the arbitration agreements providing that any dispute between him and Mount Royal Towers be submitted to arbitration “as provided by Alabama law” reincarnates § 8-1-41(3) and thus renders the arbitration agreements meaningless. Rather, we agree with the rationale expressed by the Supreme Court of Texas in In re Olshan Foundation Repair Co., 328 S.W.3d 883, 890-91 (Tex.2010), that generic language in an arbitration agreement indicating that the parties intended for their arbitration to *868 be governed by “the laws of the state” or “Texas law” would not preempt the FAA because “[t]he FAA is part of the arbitration laws of Texas and can be applied to arbitration administered pursuant to the laws of Texas.” This rationale is true even more so in Alabama, where, as a result of § 8-1-43(3), we have largely “not developed rules of arbitration for dealing with pre-dispute agreements independent from the law that has developed in cases in which the [FAA] applied.” Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 106 (Ala.1995).[4] In sum, the FAA is part of the arbitration laws of Alabama and can be applied to arbitration administered “as provided by Alabama law.”
IV.
Robertson next argues that the arbitration agreements are too vague to be enforced because they make only a general call for arbitration without providing any details regarding the selection of an arbitrator or arbitrators or the applicable rules of arbitration. As explained supra, arbitration agreements are to be treated like any other contracts and, as Robertson argues, “if a court cannot discern the intentions of the parties to a contract because the contract is so vague and indefinite, the contract is void on the ground of uncertainty.” Drummond Co. v. Walter Indus., Inc., 962 So.2d 753, 774 (Ala.2006). See also Capmark Bank v. RGR, LLC, 81 So.3d 1258, 1268 (Ala.2011) (holding enforceable a contract that failed to express all the terms essential to the transaction).
However, although Robertson is correct that the arbitration agreements do not set forth all the procedural details of any arbitration that might result from the agreements, they do clearly evince the parties’ intent to submit future disputes to arbitration; that much is clear. In light of that fact, we think it appropriate to look to the FAA to fill in the gaps in the arbitration agreements so as to give effect to the expectations of the parties as expressed by those agreements. Section 5 of the FAA, in fact, provides:
“If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.”
(Emphasis added.) This Court has previously condoned the use of § 5 for selecting an arbitrator in Harold Allen’s Mobile Home Factory Outlet, Inc. v. Butler, 825 *869 So.2d 779 (Ala.2002), summarized as follows in BankAmerica Housing Services v. Lee, 833 So.2d 609, 619 (Ala.2002):
“In Butler, the plaintiff signed an arbitration agreement that accorded the defendant seller the sole right to choose the arbitrator, the only limitation on that right being that ‘no arbitrator may be selected by the SELLER who shall have provided legal representative services to or for the SELLER at any time.’ 825 So.2d at 781. The trial court held that this clause, which gave the defendant alone the right to select the arbitrator, with no input from the buyer, was unconscionable. Based on § 5 of the Federal Arbitration Act (hereinafter referred to as ‘the FAA’), the trial court appointed an arbitrator for the parties. In this Court’s review of the trial court’s actions, we concluded that the trial court acted properly when it looked to § 5 of the FAA for guidance in fashioning a remedy....
[[Image here]]
“The trial court selected an arbitrator on the basis that the selection method provided by the agreement was invalid and that § 5 provided that it was the court’s duty to select an arbitrator in the absence of valid direction in the arbitration agreement. Because the portion of the arbitration agreement providing for the selection of arbitrators was found to be unconscionable and therefore invalid, the arbitration agreement no longer provided for the selection of arbitrators. Under those circumstances, this Court determined that the trial court had acted properly under the FAA by selecting an arbitrator for the parties.”
The arbitration agreements executed by the parties in this case contain no provision for selecting an arbitrator. Accordingly, we reaffirm the principle set forth in Butler that it is proper for the trial court to apply § 5 of the FAA to appoint an arbitrator when parties to a dispute have entered into an arbitration agreement that contains no valid provision for appointing an arbitrator.
Citing cases such as Rivera v. American General Financial Services, Inc., 150 N.M. 398, 259 P.3d 803 (2011), Robertson argues that appointing an arbitrator neither he nor Mount Royal Towers agreed to is an impermissible expansion of their arbitration agreements. We disagree. In Rivera, the Supreme Court of New Mexico declined to appoint an arbitrator in a case where the designated arbitral forum was unavailable, holding that “the [designated forum] was integral to the agreement to arbitrate and ... § 5 of the FAA does not allow a court to select and impose on the contracting parties a substitute arbitrator inconsistent with the terms of their contract.” 150 N.M. at 410, 259 P.3d at 815. However, this Court has also spoken on this topic, and, in Ex parte Warren, 718 So.2d 45, 49 (Ala.1998), we held that it was proper to follow the procedure set forth in § 5 of the FAA to appoint a replacement arbitrator if the arbitrator designated in the agreement was unavailable and there was “no evidence that [the parties] intended their choice of an arbitrator to be an essential term of the contract.” In the instant case, the arbitration agreements executed by Robertson and Mount Royal Towers contained no provisions for selecting an arbitrator or specifying the procedures to be followed in arbitration. We may assume, therefore, that these matters were not an integral and essential part of their agreements. This case is accordingly more akin to Ex parte Warren than Rivera because, as in Ex parte Warren, we have “only the inference that the parties agreed in general to submit their claims to arbitration.” 718 So.2d at 49. That intent of the parties is paramount and can be given effect by applying § 5 of the FAA. *870 Robertson’s argument that the arbitration agreements are too vague to be enforced is without merit.
V.
Robertson appealed the order of the trial court holding that his claims against Mount Royal Towers are subject to an arbitration agreement and compelling Robertson to arbitrate those claims. Robertson argues that the arbitration agreements he executed with Mount Royal Towers are not valid under Alabama law and, in the alternative, that, if they are valid, they are too vague to be enforced. However, as explained supra, the arbitration agreements are valid under Alabama law, and the trial court may properly fill in “gaps” in those agreements as necessary to give effect to the parties’ agreement to arbitrate. For these reasons, the order of the trial court is hereby affirmed.
AFFIRMED.
BOLIN, PARKER, MURDOCK, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., dissents.

. The parties dispute whether any or all of Robertson’s claims should properly be considered medical-malpractice claims and, accordingly, which arbitration agreement would govern those claims. However, because the language relevant to this appeal is the same in both agreements, it is unnecessary for us to decide that issue.

. As Alan Scott Rau stated in Does State Arbitration Law Matter At All? Part I: Federal Preemption, ADR Currents, June 1998, at 19-20:
"Are we to suppose that the parties to this contract agreed to arbitration, while at the same time intending to adopt a body of state law that would in all possible circumstances make their agreement to arbitrate invalid? One who believes that is capable of believing anything.”
(Quoted in Christopher R. Drahozal, Federal Arbitration Act Preemption, 79 Ind. L.J. 393, 413 n. 153 (Spring 2004).)

. Our holding in this regard effectively addresses the issue present — but not raised by the parties — in J.L. Loper Construction Co. v. Findout Partnership, LLP, 55 So.3d 1152, 1153 (Ala.2010), where the parties had agreed to arbitrate any disputes "in accordance with the Alabama Arbitration Act.” We stated then:
"Predispute arbitration agreements under the Alabama Arbitration Act, §§ 6-6-1 thru -16, Ala.Code 1975, contravene Alabama law and are not specifically enforceable. See § 8-1-41(3), Ala.Code 1975, which provides that an agreement to submit a controversy to arbitration cannot be specifically enforced. See also Alafabco, Inc. v. Citizens Bank, 872 So.2d 798 (Ala.2002), reversed on other grounds by Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). The issue of enforceability of the predispute arbitration provision agreed upon by the parties in Article 9 of the construction contract was not presented to the trial court, nor was it argued in briefs to this Court. Accordingly, we will not address that issue on appeal.”
Id. at 1153 n. 1.

. In contrast, Texas has adopted the Texas General Arbitration Act (“TAA”), Tex Civ. Prac. & Rem.Code, § 171.001 et seq., which contains provisions applying to pre-dispute arbitration agreements, and In re Olshan Foundation Repair, 328 S.W.3d at 891, affirmed the right of parties to elect to arbitrate pursuant to the TAA to the exclusion of the FAA. However, the Alabama Arbitration Act, § 6-6-1 et seq., Ala.Code 1975, generally applies only to post-dispute arbitration agreements. See, e.g., § 6-6-3 (“The parties must concisely state in writing, signed by them, the matter in dispute between them and that they desire to leave the determination thereof to certain persons, naming them as arbitrators. ..: ”).