STUART, Justice.
University Toyota and University Chevrolet Buick GMC (hereinafter referred to collectively as “the 'University dealerships”) appeal the order of the Colbert Circuit Court allowing Beverly Hardeman and Vivian Roberts to pursue their claims against the University dealerships in- arbitration proceedings conducted by the American Arbitration, Association (“the AAA”) instead of the. Better Business Bureau of North Alabama (“the BBB”),, the entity identified in the controlling arbitration agreements. We-reverse and remand.
I.
In December 2011, Hardeman purchased a 2Ó12 GMC Acadia sport-utility vehicle from Jim Bishop Buick in Tuscum-bia; in April. 2013, Roberts purchased a 2013 Toyota Tacoma - pickup truck from Jim Bishop Toyota in Tuscumbia (Jim Bishop Buick and Jim Bishop Toyota are hereinafter reférred to collectively as “the Jim Bishop dealerships”). In conjunction with their purchases of those vehicles, Hardeman and Roberts, purchased service contracts entitling them to. no-cost oil changes for as long as they owned their respective vehicles. The Jim Bishop dealerships thereafter provided Hardeman and Roberts free oil changes pursuant to those service contracts without issue.
.At some point in time, the Jim Bishop dealerships were sold and rebranded as the University dealerships. Initially, the University dealerships honored the no-cost oil-change service contracts sold by their predecessors in interest, the Jim Bishop dealerships; however, they-- eventually stopped providing no-cost oil changes, to customers who held those contracts, such *396 as Hardeman and Roberts. On October 29, 2015, Hardeman and Roberts filed a demand for arbitration with the BBB, the dispute-resolution entity identified in arbitration agreements they-'had executed when they purchased their vehicles, on behalf of themselves and all similarly situated individuals, based on the University dealerships’ refusal to honor the service contracts sold by the Jim Bishop dealerships. The subject arbitration agreements provided, in relevant part:
“Buyer/lessee and dealer agree, that all claims, demands, disputes, or controversies of every kind or nature between them arising from, concerning or relating to ... service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle ... shall be settled by binding arbitration conducted pursuant to the provision[s] of the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. ...
“Either party may demand arbitration by filing with the Better Business Bureau of North Alabama, P.O. Box 383, Huntsville, AL 35804, (256) 532-1437, a written demand for .arbitration along with a statement of the matter in controversy.”
It appears, however, that the BBB informed Hardeman and Roberts that it did not conduct class-action arbitration proceedings, and they accordingly withdrew their arbitration demand.
On December 2, 2015, Hardeman and Roberts filed a complaint in the Colbert Circuit Court naming as - defendants the University dealerships and asserting breach-of-contract, conversion, and unjust-enrichment claims. Hardeman and Roberts also sought class certification of their claims, asserting that over 100 individuals had similarly been injured by the University dealerships’ failure to honor certain service contracts sold by their predecessors in interest, the Jim Bishop- dealerships. On January 17, 2016, the University dealerships moved the trial court to. compel Hardeman and Roberts to arbitrate their claims in accordance with the arbitration agreements they had executed when they purchased their vehicles and accompanying service contracts. In support of that motion, the University dealerships submitted into evidence copies of the arbitration agreements and an affidavit' from the former owner of the Jim Bishop dealerships authenticating the agreements and explaining the interstate nature of the underlying transactions with Hardeman and Roberts. Hardeman and Roberts thereafter filed a response opposing the University dealerships’ motion to compel arbitration, asking the trial court to allow their action to proceed either in state court or, in the alternative, in an arbitral forum other than the BBB, i.e., one that would conduct class-action arbitration proceedings. On May 19, 2016, the trial court entered an order directing that Harde-man’s and Robert’s claims be sent to arbitration before the AAA with the AAA arbitrator to subsequently decide whether class-action arbitration was available to them. On May 26, 2016, Hardeman and Roberts did in fact initiate an arbitration proceeding before the AAA.
On June 3, 2016, the University dealerships moved the trial court to alter, amend, or vacate its May 19 order, arguing that the subject arbitration agreements required any arbitration proceedings between the parties to be conducted by the BBB and that Hardeman and Roberts had no right, contractual or otherwise, to engage in class-action arbitration proceedings. After becoming aware that Harde-man and Roberts had initiated the AAA arbitration proceeding,' the University dealerships also moved both the trial court and the AAA to stay those proceedings *397 until their pending motion to alter, amend, or vacate the trial court’s May 19 order was decided. Hardeman and Roberts opposed the University dealerships’ motions, and, on August 19, 2016, the trial court entered its final order, stating:
“In the above-styled case, [Hardeman and Roberts] claim that [the University dealerships] failed to honor lifetime oil change contracts to customers who purchased cars from their dealership[s]. The dealership^] [were] sold, and [the University dealerships] deny any responsibility for the contracts. [Harde-man and Roberts] seek to enforce the contract for themselves, and any other customers similarly situated.
“At the time of [Hardeman’s and Roberts’s] purchased], ... arbitration agreements] [were] signed. The agreements] state[ ] that arbitration would be through the [BBB]. [Hardeman and Roberts] state, however that [the] BBB has refused, or is not capable of, making the initial determination as to whether they will be allowed to proceed as a class action.
“As a result of [the] BBB’s inability to make this determination, [Hardeman and Roberts] asked this court for an order allowing arbitration to proceed through [the] AAA [The University dealerships] object and request that the case proceed with a case-by-case arbitration with [the] BBB.
“After hearing arguments, this court does order that the parties shall begin arbitration with [the] AAA. The arbitrator should first determine whether [Hardeman and Roberts] may proceed as a class. If the arbitrator selected through the AAA determines that the parties may not proceed to seek a global settlement, arbitration by [the] AAA shall cease immediately. The parties, at that point, must seek arbitration through [the] BBB, on a case-by-case basis, in accordance with the agreement.”
On August 23, 2016, the University dealerships filed their notice of appeal to this Court.[1]
II.
In BankAmerica Housing Services v. Lee, 833 So.2d 609 (Ala. 2002), this Court considered a similar case in which the appellant had succeeded in the trial court in its attempt to compel arbitration but thereafter filed an appeal to this Court arguing that the trial court had compelled arbitration in a manner inconsistent with the governing arbitration provision. We stated then that we would review the order compelling arbitration de novo to determine whether the trial court, although granting the requested relief, had nevertheless committed an error substantially prejudicing the party seeking review. Lee, 833 So.2d at 617.
III.
It is undisputed in this case (1) that Hardeman’s and Roberts’s purchases of automobiles and service contracts from the Jim Bishop dealerships affected interstate commerce; (2) that both Hardeman and Roberts executed arbitration agreements in conjunction with their purchases; (3) that those arbitration agreements are valid;’[2] and (4) that those arbitration agree- *398 merits encompass the underlying dispute regarding the University dealerships’ responsibility to honor the service contracts purchased by Hardeman and Roberts. Thus, it is also undisputed that-the University dealerships were entitled to have the arbitration agreements enforced and their motion to compel arbitration granted. Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003). The issue before this Court is whether the trial court, though granting the motion to compel arbitration, properly enforced the arbitration agreements inasmuch as it did not require Hardeman and Roberts to arbitrate their claims before the BBB, the forum agreed to by the parties. For the reasons that follow, we must answer that inquiry in the negative.
In American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013), the Supreme Court of the United States emphasized that arbitration agreements are simply a species of contract and, like all contracts, must be enforced according to their terms:
“Congress enacted the [Federal Arbitration Act, 9 U.S.C. § 1 et seq.,] in response to widespread judicial hostility to arbitration. See AT&T Mobility [LLC v. Concepcion], [563 U.S. 333, 339 (2011) ]. As relevant here, the Act provides:
“ ‘A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.’ 9 U.S.C. § 2.
“This text reflects the overarching principle that arbitration is a matter of contract. See.Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). And consistent with that text, courts must ‘rigorously enforce’ arbitration' agreements according to them terms, Dean Witter Refolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985), including terms that ‘specify with whom .[the parties] choose to arbitrate their disputes,’ Stolb-Nielsen [S.A. v. AnimalFeeds Int’l Corp.], [559 U.S, 662,] 683 [(2010)], and ‘the rules under which that arbitration will be conducted,’ Volt Information, Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. (1989).”
This Court has held likewise, explaining this principle as follows in Lee:
“When a trial court compels arbitration, it must do so in a manner consistent with the terms of the" arbitration provision. See Ex parte Cappaert Manufactured Homes, 822 So.2d 385, 387 (Ala. 2001) (‘[section] 5 [of the Federal Arbitration Act] mandates that the method set forth in the arbitration agreement be followed’); Southern Energy Homes Retail Corp. v. McCool, 814 So.2d 845 (Ala. *399 2001) (trial court directed to vacate its order because it failed to compel arbitration in a manner consistent with the terms of the agreement between the parties); Ex parte Dan Tucker Auto Sales, [718 So.2d 33, 36-38 (Ala. 1998)] (trial court erred in assigning administrative fees of arbitration to the defendant when the Rules of the AAA provided for the relief of a party in the event of hardship). A trial court’s order compelling arbitration that changes the terms of the arbitration provision will be reversed when
‘“it appears that the trial court, although it ordered the parties to arbitrate, failed to compel arbitration in a manner consistent with the terms of [the] arbitration provision.’■
“McCool, 814 So.2d at 849.”
833 So.2d at 618. See also Okay v. Murray, 51 So.3d 285, 291 (Ala. 2010) (holding that a trial court must give effect to the terms of an arbitration provision when compelling arbitration).
The arbitration agreements executed by Hardeman and Roberts in this case required them to resolve disputes “concerning or relating to .., service contracts or other products purchased as ah incident to the sale, lease or financing of the vehicle ... by binding arbitration.” Moreover, the arbitration agreements specifically set forth the procedure for initiating any arbitration proceedings—“[e]ither party may demand arbitration by filing with the [BBB] ... a written demand for arbitration along with a statement of the matter in controversy.” This fact distinguishes the instant case from cases like Robertson v. Mount Royal Towers, 134 So.3d 862, 863 (Ala. 2013), in which the parties executed a predispute arbitration agreement that did not name a forum for arbitration and the trial court accordingly had to fill in the “gap” and appoint an arbitrator of its choosing to hear the dispute. This Court affirmed the order of the trial - court compelling arbitration in Robertson, concluding that the fact the parties did not name an arbitrator indicated that the identity of the arbitrator was not “an integral and essential part” of their agreement to arbitrate. 134 So.3d at 869. Conversely, however, the arbitration agreements in this case do identify a forum for arbitration—the BBB, The fact that the parties named a specific forum in which either party could initiate arbitration indicates that the specific forum was “an integral and essential part” of their agreement to arbitrate, and the trial court was accordingly required to give effect to that intent when it compelled arbitration.'
Justice Murdock in his dissent argues that this case is essentially undistinguishable from Robertson, because, he asserts, once the BBB forum “became unavailable, a gap was effectively created, just as in Robertson, that was left to be filled by the trial court.” 228 So.3d at 402. In fact, however, there is no' evidence indicating that the BBB forum is unavailable to Hardeman and Roberts. To the contrary, Hardeman and Roberts initiated arbitration before the BBB and, for all that appears, the BBB would have conducted arbitration proceedings resolving Hardeman’s and Roberts’s disputes with the University dealerships had Hardeman and Roberts not voluntarily chose to withdraw their arbitration demand. Indeed, the BBB is presumably still willing and ready to conduct arbitration proceedings to resolve Hardeman’s and Roberts’s disputes with the University dealerships; it has merely indicated that it .will not conduct, a single class-action, arbitration proceeding to resolve the claims of every aggrieved customer that purchased a. no-cost oil-change service contract from the *400 Jim Bishop dealerships- that the University dealerships now will not honor;
To the extent the dissent is concluding that the BBB forum is unavailable because of the BBB’s policy not to conduct class-action arbitration, we disagree. Hardeman and Roberts have no right to engage in class-action arbitration proceedings, because the arbitration agreements they entered into contain no provision authorizing the arbitration of class-action claims. The Supreme Court of the United States has recognized that the differences between bilateral and class-action arbitration are sufficiently great that it should not be assumed that the parties to an arbitration agreement have implicitly agreed to allow class-action arbitration merely because they failed to address that issue in the arbitration agreement. See Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 687, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (“We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the [Federal Arbitration Act], that the parties’ mere silence on the issue of class-action arbitration . constitutes consent to resolve their disputes in class proceedings.”). The United States District Court for the Middle District of Alabama has further explained:
“It is helpful initially to address the effect of a valid arbitration agreement’s silence as to the availability of class-wide relief in the arbitrable forum. Under Alabama law, ‘classwide arbitration is permitted only when the arbitration agreement provides for it.’ Taylor v. First N. Am. Nat’l Bank, 325 F.Supp.2d 1304, 1320 n. 28 (M.D. Ala. 2004) (citing Med. Ctr. Cars, Inc. v. Smith, 727 So.2d 9, 20 (Ala. 1998)); see also Hornsby v. Macon Cnty. Greyhound Park, Inc., No. 10cv680 ... (M.D. Ala. June 13, 2012) (explaining that, because the arbitration agreement ‘says nothing about classwide arbitration,’ Alabama’s ‘default rule, that “classwide arbitration is permitted only when the arbitration agreement provides for it,” kicks in.’) (quoting Taylor, 325 F.Supp.2d at 1320 n. 28). Based upon these authorities, if Plaintiffs ultimately are required to arbitrate their disputes, class-wide arbitration would be unavailable because the Arbitration Agreement does not expressly provide for it.-
“Moreover, and more to the point for purposes of this opinion, the fact that there is no class-action vehicle available to Plaintiffs in the arbitral forum does not mean, as Plaintiffs contend, that the Arbitration Agreement is unenforceable and that class litigation is available in a judicial forum. As the district court highlighted in Hornsby, ‘the Eleventh Circuit has held that arbitration clauses are enforceable even when, their application may effectively prevent plaintiffs from pursuing their claims as a class action.’ ... (citing Caley [v. Gulfstream Aerospace Corp.], 428 F.3d [1359,] 1378 [ (11th Cir. 2005) ], which rejected the plaintiffs’ argument that the arbitration agreement was unconscionable under Georgia law because it ‘preclude[d] class actions’). And post-Caley, the Supreme Court has ruled that ‘a party may not be compelled under the [Federal Arbitration Act] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so’ and that consent to class arbitration cannot be inferred where the agreement is silent as to the availability of class-action procedures. Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 684, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).”
Chambers v. Groome Transp. of Alabama, 41 F.Supp.3d 1327, 1350 (M.D. Ala. 2014). *401 In sum, Hardeman and Roberts have no basis on which to force the University dealerships to engage in class-action arbitration proceedings before the. BBB—or the AAA for that matter—and the BBB’s policy of not conducting class-action arbi-trations accordingly -in no way renders the BBB forum unavailable to .Hardeman and Roberts.
Finally, in spite , of the clear language in the arbitration agreements, Hardeman and Roberts make the argument—unsupported by any citations to caselaw, statute, or other authority—that “[a]ll the arbitration agreement explicitly states is that ‘either party may demand arbitration by filing with the [BBB].’ What occurs after filing this demand is left unsaid.” Hardeman and Roberts’s brief, p. 10. To the extent that Hardeman and Roberts are arguing that they were required only to initiate arbitration with the BBB, but were then free to withdraw that claim and to pursue a resolution in some other forum, their argument is clearly without merit; to accept it would defeat the very purpose of having an arbitration agreement. •
IV.
The University dealerships appeal the order, of the trial court allowing Hardeman and Roberts to arbitrate the claims they asserted against the University dealerships in arbitration proceedings conducted by the AAA, notwithstanding the fact that the arbitration agreements executed by Hardeman and Roberts identify the BBB as the entity that is to resolve any disputes that are subject to the arbitration agreements. Because a trial court can compel arbitration only in a manner consistent with the terms of the applicable arbitration agreement, we reverse the trial court’s order compelling arbitration and remand the cause for the entry of a new order compelling Hardeman and Roberts to arbitrate their claims against the University dealerships before the BBB if they wish to pursue those claims.
REVERSED AND REMANDED.
Bolin, Shaw, Main, Wise, and Bryan, JJ., concur.
Parker, J., concurs in the result.
Murdock, J., dissents.

. On September 1, 2016, this Court entered an order staying all court and arbitration proceedings involving this case pending further order of the Court.

. Hardeman and Roberts have not explicitly argued that the arbitration agreements they executed are unconscionable or otherwise invalid either because they do not specifically provide for class-action arbitration or because the chosen forum does not conduct class- *398 action arbitration. Both federal and state 'caselaw is clear, however, that such arguments have no merit. See, e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (''[A] party may not be compelled under the [Federal Arbitration Act] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.”), and Med Center Cars, Inc. v. Smith, 727 So.2d 9, 20 (Ala. 1998) ("Although the plaintiffs' contentions are practically appealing, after reviewing the authorities we conclude that to require class-wide arbitration would alter the agreements of the parties, whose arbitration agreements do not provide for class-wide arbitration.”).